CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY v. MARY HOGAN.

[FILED NOVEMBER 6, 1889.]

1. **Railroads**: FENCING: LIABILITY. Where, from the agreed statement of facts in a case, it is made to appear that the corporate limits of a city, with buildings thereon, extend along one side of the various side tracks of a railway, the land on the other

52

side not being platted; that the side tracks thus established were necessary and proper for the transaction of the business of the railway, and that it would be inconvenient and unsafe to the employes of the company if a cattle guard and fence were erected, the railway company is not required to fence its tracks at that point, and will not be liable for stock killed by its engines and cars at that place unless guilty of negligence.

2. ———: ———: STOCK KILLED WITHOUT NEGLIGENCE.    Where the attorneys for the plaintiff and defendant agree in writing that certain stock killed by the engines of a railway company escaped without the fault of the owner, and was killed at a place where the court finds the company was not required to fence its track, and without the negligence of the railway company, there can be no recovery for such stock.

ERROR to the district court for Lancaster county. Tried below before FIELD, J.

*Marquett & Deweese,* for plaintiff in error:

The decisions cited in defendant in error's brief were under statutes which make no exception in regard to railroad fencing, the courts so construing the statute that a fence was often required within the town limits.    Our statutes have made the town limits also those of fencing, hence those decisions do not apply here.    Even where there was no limitation in the law requiring tracks to be fenced the company would not be bound to fence its tracks where this horse was killed or where it entered. (*Cole v. R. Co.,* 38 Ia., 314; Wood, Railway Law, p. 1555; *I., etc., R. Co. v. Quick,* 109 Ind., 295; *McGrath v. R. Co.,* 57 Mich., 555; *O., etc., R. Co. v. Rowland,* 50 Ind., 349; *C., etc., R. Co. v. Wood,* 82 Id., 598; *Lloyd v. R. Co.,* 49 Mo., 199.)

*Sawyer & Snell,* for defendant in error:

Only when a place is a public one, or used by the public, is the company relieved from its obligation to fence it. (*Bean v. R. Co.,* 3 West. Rep , 192 ; *Flint, etc., R. Co. v. Lull,* 28 Mich., 510 ; *Greeley v. R. Co.,* 33 Minn., 137; *I.,*

*etc., R. Co. v. Parker*, 29 Ind., 471; *J., etc., R. Co. v. Park-hurst*, 34 Id., 501; *A., etc., R. Co. v. Shaft*, 33 Kas., 521 ; *Prickett v. R. Co.*, Id., 748.) As to what is a depot, see 1 Rorer on Railroads, sec. 7, p. 486.. The place where the horse was killed was not, under the most liberal construction, a public one, and should have been fenced. Under the statutes of other states railroads have been held liable for not fencing within corporate limits. (*Coyle v. R. Co.*, 62 Ia., 518; *U. P. R. Co. v. Dyche*, 28 Kas., 200 ; *Wymore v. R. Co.*, 79 Mo., 247; *Lane v. R. Co.*, 18 Mo. App., 555 ; *Cleveland, etc., R. Co. v. McConnell*, 26 O. S., 57; *Brace v. R. Co.*, 34 N. Y., 427; *Corwin v. R. Co.*, 13 Id., 42.)

MAXWELL, J.

This cause was submitted to the court below on a stipulation of facts, which is substantially as follows : " That on the 10th day of November, 1887, the said horse of the plaintiff accidentally got loose, without fault or negligence on the part of the plaintiff, from the stable where he was confined on plaintiff's land, which stable is marked 'A' on the map hereafter mentioned, and was discovered on the east side of defendant's main track, and between that and the switch tracks of the defendant, also shown on said map at a place on said map marked 'B;' that an out-going passenger engine and cars of the defendant, coming along at this time (12:10 P. M.) scared the horse, which ran along the side of the main track to a place at or near to the switch marked 'C,' when, attempting to cross over the main track, he was struck by the said engine of the defendant and killed; that the place where said accident occurred was not at the crossing of any public road or highway, but was in Lancaster county ; that said accident occurred without any negligence or fault on the part of defendant, unless it may be on account of the want of fencing the railroad

track at the place where the horse entered upon the defendant's right of way and where he was struck and killed as aforesaid; that said horse entered upon defendant's right of way and tracks at some point north of the bridge on Salt creek, as shown on the map, and either within the corporate limits of Lincoln or west of First street; that defendant's road, where said horse entered upon the defendant's right of way, and where he was killed, has been in operation since the year 1870, and is not now nor never has been fenced on either side.

"That the corporate limits of the city of Lincoln at the time of the accident extended as far west as First street, as shown on the map, and also included Mechanics' addition as far west as the center of Salt creek, which Mechanics' addition was included in the corporate limits of the city of Lincoln at the time of the accident, and had been within such corporate limits of the city of Lincoln at the time of the accident, and had been within such corporate limits since March 18, 1887; that the West Side addition, lying immediately east of the defendant's right of way and abutting thereon, as shown on the map, was not included within the corporate limits of the city of Lincoln at the time of the accident, but was incorporated with the city of Lincoln on the 13th day of February, 1888, and that on February 13, 1888, Highland Park and Elmwood additions, as shown on the map, on the west side of the defendant's railroad and right of way, and west of a line projecting to the south from the west side of Sherwin's addition, as shown on the map, through the land of M. A. Hogan, and extending as far south as the south side of Thayer street, as shown in Elmwood addition, and including that portion of M. A. Hogan's land west of said line, were duly and legally incorporated with the city of Lincoln; that at the time of the accident and at the immediate place where the accident occurred the defendant's right of way and M. A. Hogan's land lying on the west side of the right of way were not

incorporated within the city limits of Lincoln; that at the date of said accident none of the additions herein named were incorporated into or included within the corporate limits of any town, city, or village, excepting the said Mechanics' addition; that the ground immediately east of the defendant's right of way and the place of the accident and abutting upon said right of way is, and was at the time of the accident, laid out and platted into an addition to Lincoln known as 'West Side addition' and had several houses thereon, which were occupied by tenants or the owners; the same was also true of Mechanics' addition and Field and Holmes' subdivision; that the land on the opposite side of the track from 'West Side addition,' being fifteen (15) acres, and where plaintiff lives, is now, and was at the date of the killing of said horse, owned by plaintiff and has never been platted and remains in one body, and was at the date of the killing of said horse outside of the corporate limits of any town, city, or village, and there were no roads or streets running through the same, and no one living thereon except this plaintiff and her family; said tract of land is marked on said map M. A. Hogan, 9; but a portion of said land was used as a brick yard, and for the manufacture and sale of brick.

"That the freight and passenger depots of the defendant are northeast of the place where said horse was killed and are within the original corporate limits of the town of Lincoln, the passenger depot being about 5,200 feet and the new freight depot 6,000 feet from the place of said accident; that although the map shows various streets leading up to — and E street crossing the defendant's tracks, there is no means of getting over the same from Salt creek to F street with wagons and horses except at said F street, and there is no traveled road of any kind leading up to or over said tracks between said points, except at said F street; that the defendant had established and for many years used the various tracks through defendant's

grounds and yard limits, a portion of which are shown on the plat hereto attached, said railroad yards being used for depot and station purposes and for side tracks and switching cars thereon ; that this yard limit extended as far south as the bridge across Salt creek, as shown on the map.

" That the railroad track of defendant immediately southwest and up to Salt creek to the bridge was properly fenced, the bridge serving as a cattle guard, to which the fence on either side of the defendant's railroad was properly connected ; that the right of way at the point where the accident happened, belonging to the railroad company, is 200 feet wide ; that it would be inconvenient and unsafe to the employes of the road if a cattle guard and fence were nearer to the switch north of Salt creek than where the bridge itself is located, and that the yard limits thus established and used by defendant were necessary and proper in the transaction of the business of the company as a common carrier."

The court found the issues in favor of the defendant in error and rendered judgment for the value of the horse. Sec. 1, art. 1, chap. 72, Comp. Stats., provides " That every railroad corporation, whose lines of road or any part thereof is open for use, shall within six months after the passage of this act, and every railroad company formed or to be formed, but whose lines are not now open for use, shall within six months after the lines of such railroad or any part thereof are open, erect and thereafter maintain fences on the sides of their said railroad, or the part thereof so open for use, suitably and amply sufficient to prevent cattle, horses, sheep, and hogs from getting on the said railroad, except at the crossings of public roads and highways, and within the limits of towns, cities, and villages," etc.

It will be observed that a railroad company is required to fence its track at all points except "within the limits of towns, cities, and villages," and at the crossings of public roads. With the exceptions named, it is "to erect and maintain fences on the sides of their said railroads," etc.

Construing these provisions together, it is apparent that in a case like that under consideration, where " the ground immediately east of the defendant's right of way and the place of the accident and abutting upon said right of way is and was at the time of the accident laid out and platted into an addition to Lincoln, known as " West Side addition," and had several houses thereon which were occupied by tenants or the owners," etc., is within the exceptions of the statute.   In such case the limits of the city extend to the track on the east, and therefore the track on that side is not required to be fenced, and a fence upon the west side would not have the effect to keep stock off the track.   In fact, such fence might become an obstruction that would result in injury to stock, as in *B. & M. R. R. v. Franzen*, 15 Neb., 365.   To be effective the road must be fenced on both sides with suitable cattle guards at the crossings of public roads to prevent stock from going upon those parts of the track which are fenced.   A railway company therefore is required to fence its track in such cases only where it is necessary to fence on both sides thereof.   The company was not liable therefor upon the ground of a failure to fence its track.   This decision is to be confined to the facts of this case as agreed upon by the parties, and the question as to the limits of the municipal corporation, where land is merely platted but no buildings erected thereon, is not before the court.   From the stipulation of facts it appears that neither party was to blame; that the horse escaped without negligence on the part of its owner, and was killed without negligence on the part of the railroad company.   This being so, no fault can be imputed to either party and there can be no recovery.

The judgment of the district court is reversed and the action dismissed.

JUDGMENT ACCORDINGLY.

THE other Judges concur.