The Toledo, St. Louis and Kansas City Railroad Co.

*v.*

Martin Franklin.

*Filed at Mt. Vernon November 22, 1895.*

1. Railroads—*failure to fence right of way near village limits.* Failure to enclose 171 feet of railroad occupied by main track between a village limits and a railroad bridge, as required by statute, is not excused because the absence of a fence, with the necessary cattle-guard, would tend to greater convenience for the company, as well as safety to its employees while engaged in switching.

2. Same—*liability for stock killed at place not fenced.* Failure to fence its right of way between village limits and a bridge of the road near by, renders the company liable for a horse which got upon the track at such uninclosed place and was killed on the bridge.

*T., St. L. & K. C. R. R. Co.* v. *Franklin,* 53 Ill. App. 632, affirmed.

Appeal from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Fayette county; the Hon. Robert B. Shirley, Judge, presiding.

The material facts of this case, as stated by the Appellate Court, are as follows:

"This is a suit brought before a justice of the peace by appellee, against appellant, to recover the value of a horse which was struck and killed on defendant's track upon a bridge, by the engine of a moving train operated by the servants of defendant. The cause was tried on appeal in the court below, when a verdict for $85 as the value of the horse and $35 as attorney's fees, in favor of plaintiff, was returned, and judgment on the verdict was entered for $120 and costs of suit. It was admitted on the trial by defendant that the horse was worth $85, and $35 would be a reasonable fee for the services of plaintiff's attorneys; that plaintiff owned the horse, and defendant, on February 25, 1893, owned and operated a line of railway passing through the incorporated town or village of Ramsey, in said county, in an easterly and westerly direc-

tion; that on said day, upon a bridge east of the town or village, over which said railroad ran and upon which said horse had estrayed, it was struck and killed by a train of cars operated by the servants of the defendant; that the point where the horse was struck was 214 feet east of the east line of the corporate limits of Ramsey; that the horse entered upon the defendant's right of way west of the depot, and continued up the same on the south side and along said railway until within about 40 feet of the west end of the bridge, when it strayed upon the railway track, thence upon said bridge to the point at which it was struck and killed. It was 1900 feet from the east end of defendant's depot in Ramsey to the east line of the corporate limits. On the north side of the main track, which extends east toward the bridge, was a short side-track, and on the south side another switch track extends in the same direction to a point 114 feet west of the east line of the corporate limits and 285 feet west of the west end of the bridge, intersecting and connected with the main track. The east corporate limit line crossed defendant's road 171 feet west of the bridge, and thus it appears that for a distance of 114 feet within the corporate limits, and continuing easterly beyond those limits and beyond said side or switch tracks, was the main track of defendant's road. It was admitted also that said road had been open for use and in operation for several years next preceding the time of accident. The horse got upon defendant's track at a point beyond the corporate limits. There was no fence or cattle-guard to prevent the animal from passing along the right of way east, over the east line of the town, and getting upon defendant's track as it did. It was proved, and is not denied, that defendant failed to erect and maintain fences on the sides of its main track outside of the corporate limits, suitable and sufficient to prevent stock from getting on the track outside those limits, and if it had performed this statutory duty, by erecting side fences from them to the track, with suitable

cattle-guard there, plaintiff's horse could not have strayed upon the track or bridge and the accident would not have occurred."

The Appellate Court has affirmed the judgment of the circuit court, and, in granting an appeal to this court, has also granted a certificate of importance.

Bayless & Guenther, and Clarence Brown, for appellant:

Where an injury results to animals by coming in contact with trains of cars upon a railroad track, at a place where the company is not bound to fence, the company is not liable unless the injury was the result of negligence or want of care on the part of the servants in charge of the locomotive or train. *Railroad Co. v. Bull*, 72 id. 537; *Railroad Co. v. Lynch*, 67 id. 149; *Railroad Co. v. Dugan*, 10 Ill. App. 233.

The railroad company is not bound to fence up such part of its depot grounds as are required to be open for the convenience of the public in the use of the road. *Railroad Co. v. Beatty*, 36 Ind. 19; *Swearingen v. Railroad Co.* 64 Mo. 73; *Lloyd v. Railroad Co.* 49 id. 199; *Morris v. Railroad Co.* 58 id. 78; *Davis v. Railroad Co.* 26 Iowa, 529; *Railway Co. v. Campbell*, 47 Mich. 265; *Railway Co. v. Lull*, 28 id. 515; 1 Redfield on Railways, 469; Thompson on Negligence, p. 519, sec. 24.

In those places where there is no obligation to construct a fence, the duty and the liability of the railroad company are the same as at common law. *Smith v. Railroad Co.* 34 Iowa, 506; *McPheeters v. Railroad Co.* 45 Mo. 23; *Railroad Co. v. Barton*, 80 Ill. 72; *Railroad Co. v. Christy*, 43 Ind. 144; *Roberts v. Railroad Co.* 4 C. B. (N. S.) 506.

A railroad company is not required to fence its road where such fence interferes with its own rights in operating its road or transacting its business, nor where the rights of the public in traveling or doing business with the railroad company are interfered with. *Railroad Co.*

v. *Oestel,* 20 Ind. 231; *Railroad Co.* v. *Beatty,* 36 id. 15; *Railroad Co.* v. *Christy,* 43 id. 143; *Railway Co.* v. *Rowland,* 50 id. 349; *Railroad Co.* v. *Wood,* 82 id. 593; *Railway Co.* v. *Bowyer,* 45 id. 496; *Railway Co.* v. *Crandall,* 58 id. 365; *Railroad Co.* v. *Kinney,* 8 id. 402; *Railroad Co.* v. *Tipton,* 101 id. 197.

Farmer, Brown & Turner, for appellee.

Mr. Justice Magruder delivered the opinion of the court:

The first section of the act of the legislature of Illinois in relation to fencing and operating railroads, approved March 31, 1874, provides : "That every railroad corporation shall, within six months after any part of its line is open for use, erect and thereafter maintain fences on both sides of its road, or so much thereof as is open for use, suitable and sufficient to prevent cattle, horses, sheep, hogs or other stock from getting on such railroad, except at the crossings of public roads and highways, and within such portion of cities and incorporated towns and villages as are or may be hereafter laid out and platted into lots and blocks," etc.    (2 Starr & Cur. Stat. p. 1927).    If stock is killed by a railroad company at a place where the law does not require the company to fence its road, the party seeking a recovery must prove that such killing was caused through the negligence of the railroad company.    But where stock is killed by a railroad company at a place where the statute requires the road to be fenced and where it has not been fenced, the railroad company will be liable for all damages sustained by such killing, regardless of whether the stock was killed through the negligence of the company or not. (*Illinois Central Railroad Co.* v. *Bull,* 72 Ill. 537).

The negligence here charged against the appellant company, in order to make it liable for the value of the horse killed, is its failure to perform the duty imposed upon it by the foregoing statute.    It is admitted, that the portion of appellant's road, which crosses the bridge

and runs up to the eastern corporation line of Ramsey, is its main track and is not within the limits of any incorporated town or village. But appellant claims, that it was not obliged to fence its track, at the point outside of the corporate limits where the horse went upon the track, for two reasons, *first*, because it required the use of the track for switching purposes and for the proper handling of its trains, and, *second*, because a cattle-guard, if placed on the main track at the intersection of cross fences with the track, would endanger the safety of its employees. The chief error assigned is, that the trial court refused to give certain instructions asked by the company to the effect, that the existence of the reasons thus indicated, if established by the evidence, would be a sufficient excuse for the failure of the company to fence its tracks at the point designated, although the express terms of the statute required it to do so.

We have held, that the foregoing statute was not intended to apply to public stations or depot grounds, even though such stations or depot grounds might not be within the limits of a village, town or city or at a highway crossing, and for the reason that the convenience of the public requires the station and depot grounds to be open. The accommodation of those traveling upon the railroad or transacting business with the company makes it necessary that there should at all reasonable times be a ready and convenient means of access to the stations and depots of the company. "To require those places to be fenced would cause delay and inconvenience to the public, and detract from the public character of railways." (*Chicago, Burlington and Quincy Railroad Co.* v. *Hans*, 111 Ill. 114).

But it has never been held in this State that the convenience of the railroad company furnishes any justification for its failure to comply with the plain requirement of the statute. On the contrary in *Chicago, Burlington and Quincy Railroad Co.* v. *Hans*, *supra*, we said (p. 118):

"The statute, by its terms, relates to the *road* or *tracks* of the railroad. It ought not to be construed so as to embrace that which is not embraced in the statute, and depots and stations are surely not embraced in its terms. True, there is a road or track at the station, but the main feature of the place is not the track. The statute no doubt may embrace tracks other than the main track. Side-tracks, not at stations or depots, and such parts of side-tracks as do not constitute part of the depot yard, may well be held to be within the statute."

Here, the failure to fence is sought to be justified upon the ground, that certain side-tracks, which are not at the station or depot and do not constitute a part of the depot yard, and which are beyond the corporate limits of the town, can be more conveniently and safely used if unfenced than if fences were erected. Such a consideration furnishes no valid reason why the statute should not be obeyed. In *Toledo, St. Louis and Kansas City Railroad Co.* v. *Thompson*, 48 Ill. App. 36, it was assigned as error, that the court refused to instruct the jury that the safety of its employees was a sufficient ground of exemption from the duty imposed upon the railroad company by the foregoing statute; and it was there held, that the instruction was properly refused, because it "drew from the supposed convenience of the company a conclusion of law which could properly follow only from that of the public."

In its opinion delivered upon the decision of this case, the Appellate Court said: "Did the facts in evidence show this unfenced and unprotected track to be one of the parts of its road it is not required to fence? It does not appear that the freight or passenger traffic of Ramsey was large. No elevators or warehouses were there to indicate a place at which considerable quantities of grain were received and shipped. There was a space of 1900 feet in length from the depot within the town limits that could be used for the proper handling of appellant's trains at that place,—amply sufficient for the transaction of its

business with the public without using any part of its main track outside those limits. Those and other facts in evidence justify the verdict. The refused instructions requested were properly refused, and the special interrogatories requested, called for findings of evidentiary and not of ultimate facts, and were also properly refused." We approve of the portion of the opinion of the Appellate Court thus quoted and adopt it as a part of this opinion.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*