CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY V. ALBERT SEVCEK.*

FILED DECEMBER 7, 1904.   No. 13,655.

1. **Railroads: FENCES.** Where a railroad company outside the limits of a city, town or village has established a flag station, with platform, elevator, office and scales, coal house, corn-cribs, etc., for public use, it is not bound, under the provisions of the statute requiring railroads to be fenced, to fence its road in such a manner as to prevent the public from having proper access to its station grounds.

2.———: ———. The failure to fence is excusable, however, only to an extent sufficient to afford the public and the railroad company necessary facilities for transacting the business reasonably to be expected at this locality.

3. ———: ———. It is the locality where animals pass onto the right of way that determines the liability of the company, as between a place where the statute requires it to fence its road and a locality which it is not required to fence.

4. **Killing Animals: LIABILITY.** Under the facts in this case, *held* that the railroad company was not excused from fencing its road at the point where the animals went upon the right of way, and that it was liable for the killing of the same.

ERROR to the district court for Howard county: CHARLES L. GUTTERSON, JUDGE.  *Affirmed.*

*J. W. Deweese* and *Frank E. Bishop,* for plaintiff in error.

*T. T. Bell, contra.*

* Rehearing allowed. See opinion, p. 799, *post.*

LETTON, C.

The sole question presented in this case is whether or not the railroad company is liable for the killing of six hogs belonging to defendant in error, which were killed at a point within the station grounds at the station of Warsaw, in Howard county. Warsaw is a flag station on the line of the railroad, there is no town or village at the station, but there is a platform, side track, elevator, office and scales, stock-yards, coal house and corn-cribs. The railroad track runs nearly straight east and west, a side track being on the south side of the main track about 900 feet long. At this point for a distance of about 1,200 feet the right of way is 200 feet wide, on the north side of the track being 50 feet and on the south side 150 feet from the center line of the track. The elevator, stock-yards, corn-crib and coal house are all situated upon the south side of the track, while the platform is upon the north side. There is also upon these grounds a house which is occupied part of the year by a man who attends to buying and shipping grain at the elevator. A public highway runs across the right of way between the stock-yards and the elevator almost at right angles to the track. The evidence shows that Warsaw is a time-card station which has the time for the arrival and departure of trains set down; that no ticket office or waiting room is there, and no tickets are sold at the station, but that tickets are sold from other points to that place. There are usually from 40 to 50 car loads of freight a year, and grain, live stock, emigrant movables, and machinery, baggage and trunks, and people are loaded and unloaded at the platform, stock is shipped and received at the stock-yards, and coal received and sold at the coal house.

Section 1, article I, chapter 72, Compiled Statutes, 1903 (Annotated Statutes, 10020), requires all railroads to erect and maintain fences on the sides of their railroad sufficient to prevent cattle, horses, sheep and hogs from getting on the railroad, except at the crossings of public

roads and highways, and within the limits of towns, cities and villages, and requires them at all road crossings to maintain cattle-guards sufficient to prevent cattle, horses, sheep and hogs from getting onto such railroad, and makes the railroad corporation liable for damages to stock killed or injured where the fences and guards are not in sufficiently good repair to accomplish the object for which the same are prescribed. If this statute is to be construed literally, the only exception to the requirement of fencing is in public highways, and within the limits of towns, cities and villages; and, since Warsaw is neither a town, city or village, the defendant in error has no defense. Must the statute be strictly and literally construed? This statute has heretofore come before this court for construction with reference to the duty of the railroad company to fence near its switch tracks. In *Chicago, B. & Q. R. Co. v. Hogan*, 27 Neb. 801, where it was stipulated that the corporate limits of a city, with buildings thereon, extended along one side of the various side tracks of a railway, the land on the other side not being platted; that the side tracks were necessary for the business of the company, and that it would be inconvenient and unsafe to the employees of the company if the cattle guard and fence were erected, it was held that the railway company was not required to fence its tracks at that point. Upon a rehearing the former conclusion was reaffirmed, and the action was reversed and dismissed. 30 Neb. 686.

In *Union P. R. Co. v. Knowlton*, 43 Neb. 751, an animal was killed at a point about midway between the limits of the city of Lincoln and the village of West Lincoln. On the part of the railroad company it was contended that the point was within the actual limits of the Lincoln yard; that the track was in constant use in the making up of trains, and that a fence thereon would be dangerous to employees. The court say:

"It is conclusively shown that the defendant's depot grounds are situated more than a mile distant from the point of the collision. Nor is there in the record any

evidence tending to prove that the use of the track between Lincoln and West Lincoln was necessary in the making up of trains, or that the facilities afforded by the tracks within the yard limits were insufficient for that purpose. The most that can be claimed by the defendant is that it is convenient for it to use the track in question in making up its trains and that it was occasionally used for that purpose. The legislature could not have intended the provision of the exception above noted to include tracks outside of the limits of cities, towns and villages, remote as is this one from the depot grounds and side tracks and not necessary for use in making up trains."

In Minnesota a similar statute made no exceptions as to fencing within cities or villages, and the court held that there was no reason why the requirements of the act should not apply within cities and villages as well as in the country, and that other provisions of the law with reference to obstructing streets and highways would prevent the inclosure of the railroad track at such points. The court further said, however:

"There is another exception implied as to places required to be left open by the public necessity or convenience, such as grounds about stations which are used for the entrance or exit of passengers, or the receipt and delivery of freight; but this public convenience is the limit of the exception." *Greeley v. St. P., M. & M. R. Co.*, 33 Minn. 136, 22 N. W. 179.

The statute is an exercise of the police power of the state enacted for the welfare not of the railroad but of the people. The object of statutes of this nature is primarily the benefit of the public, and secondarily for the benefit of private individuals. In its construction, therefore, courts must give that construction which is most for the public benefit, and must consider in a secondary degree what is the interest of the individual. To enforce the statute accordingly the letter would effectually deprive the public of all the convenience and advantage obtained by the location of a railroad station, grain and coal market,

and stock-yard at that point, and would prohibit every
railroad corporation from maintaining transportation
facilities for the convenience of farming communities
away from the limits of towns, cities or villages. It is not
the benefit to the railroad that is to be considered so much
as the welfare and convenience of the public. Every rail-
road company in this state is required by statute to fur-
nish sufficient accommodations for the transportation of
passengers and freight, and to take, transport and dis-
charge all passengers to and from such stations as the
trains stop at, from or to all places and stations upon their
road, on the due payment of fare or freight bill. Under
this section the railroad company is compelled to trans-
port passengers to Warsaw upon the due payment of fare,
and to furnish them proper facilities for access to or egress
from their station platform. It is unreasonable to sup-
pose that the law compels a railroad company to furnish
facilities to the public, and at the same time it be com-
pelled by another law to fence the public out from such
facilities. This would be manifestly a forced construc-
tion of the law. The legislature certainly never intended
to prevent a railroad company from furnishing such fa-
cilities to rural communities in which no town or village
exists, where the demand justifies the giving of the same.
As between the right of the public to thus be accommo-
dated, and the danger of the loss to the owner of live stock
by the straying of his animals upon the track, the benefit
to the public is of more importance, and there is an im-
plied exception to the strict letter of the statute which is
dictated by sound reason.

We agree therefore with the contention of the plaintiff
in error that a railroad company is not bound to fence its
tracks in such a manner as to exclude the public from
proper access to its station grounds. The failure to fence
is excusable, however, only to an extent sufficient to afford
the public and the railroad company necessary facilities
for transacting the business reasonably to be expected at
this locality. While the railroad company would be ex-

cused from fencing a sufficient portion of its right of way to allow the public access to the loading and unloading facilities there provided, it would not be excused for a failure to fence another or greater space. At the locality in question, however, we see no reason why the railroad company should not have fenced its right of way on the north side to connect with the fence on the west side of the highway, as well as to have fenced it to the highway fence on the east side of the road, as it actually did. It is the locality where animals pass onto the right of way that determines the liability of the company as between a place where the statute requires it to fence its road and a locality which it is not required to fence.

It appears from the plat that both sides of the highway running north from the right of way are fenced, and that the tract of land from whence the hogs went upon the right of way was not open to the public highway. To fence the right of way at this point would in no manner interfere with the access of the public to the transportation facilities afforded by the station. It was private property over which the hogs came, on which the public would be trespassers. Under the circumstances presented by this case the principle invoked by the plaintiff in error does not apply. We cannot speculate upon the proposition as to whether, even if the fence had been along the north side of the right of way, the hogs would have gotten onto the track by traveling east to the line of the highway. The plat in evidence shows a fence along the highway, but whether it is hog tight or not does not appear. There is no evidence to show that they came upon the right of way at the highway, and there is evidence to show that they came upon the right of way at a point where the track might have been fenced without inconvenience to the public or the employees of plaintiff in error. We believe it was the duty of the railroad company under the statute to have a fence at this point, and that they are therefore liable for the actual value of the hogs killed.

We recommend that the judgment of the district court be affirmed.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on rehearing was filed December 7, 1906. *Reversed:*

1. **Railroads: FENCES.** The intent of the statute requiring a railroad company to erect and maintain fences and cattle-guards along its line of road, is to compel the complete inclosure of the track, except in cities, towns, villages and necessary station grounds, so as to prevent access to the same at all points except public crossings.

2. ———: ———. Principles laid down in the first three paragraphs of the syllabus in former opinion, *ante*, p. 793, adhered to.

3. ———: ———. Fourth paragraph of syllabus to former opinion set aside.

LETTON, J.

In the former opinion in this case, *ante*, p. 793, it was held: "Where a railroad company outside of the limits of a city, town or village has established a flag station, with platform, elevator, office and scales, coal house, corn-cribs, etc., for public use, it is not bound, under the provisions of the statute requiring railroads to be fenced, to fence its road in such a manner as to prevent the public from having proper access to its station grounds." It was further held: "The failure to fence is excusable, however, only to an extent sufficient to afford the public and the railroad company necessary facilities for transacting the business reasonably to be expected at this locality." While we still adhere to the doctrines thus laid down, we are convinced that some of the language used in the discussion in the former opinion perhaps conveyed an erroneous impression, and in some respects failed to give due

prominence to the necessity of affording the railroad company proper facilities for the safe transaction of the business reasonably to be expected. If it were necessary for the public convenience and necessary to the proper operation of the railroad, carrying on the business with due regard and care for the safety of employees, that the track should be left unfenced at the point where the hogs came upon the right of way, then the railroad company would not be liable. The safety of the employees of the railroad in carrying on its necessary operations in the vicinity of the station must be considered, as well as the necessity of the public for access to the station grounds. It is contended by the defendant that as a matter of law a railroad company is excused from fencing its station grounds as far as its switching tracks extend in either direction, on account of the danger to employees which would arise from placing cattle-guards at any point where the men would be obliged to walk across them for the necessary operations of switching. It is a matter of common knowledge that, in the present stage of the evolution and development of railroad transportation, it has been thought advisable in many places in the state to construct long switching tracks or passing tracks, extending in many cases far beyond the limits of cities, villages or station grounds, and apparently designed eventually to become parts of a double track system. Carried to its full length, the defendant's contention would excuse a railroad company from failing to fence as far as these tracks extend, even though only used occasionaly; but this, we think, would be giving an improper construction to the statute. *Russell v. Hannibal & St. J. R. Co.*, 26 Mo. App. 368; *Chouteau v. Hannibal & St. J. R. Co.*, 28 Mo. App. 556. Under the statute the company must fence outside of the limits of cities and villages, except where excused by surrounding circumstances. If it plainly appear from the evidence that the locality is one where the proper conduct of the business, considering both public convenience and the operation of the railroad with regard to the safety of em-

ployees, requires that it be left unfenced, then the court may so declare; but where the question is one of doubt it is for the jury. *Cole v. Duluth, S. S. & A. R. Co.*, 104 Wis. 460, 80 N. W. 736. A point at which the company maintains merely a platform and a switch which is only used a few times each year cannot, in reason, be treated the same as another where a station is maintained, and where elevators, scales and corn-cribs for public convenience are found, and where freight is loaded and unloaded frequently. The fact that at a given point cars are occasionally loaded and unloaded and switched would not alone excuse a railroad company from fencing at that point; but, if the evidence showed that the public convenience and the reasonably safe operation of the defendant's business would be unduly hindered and interfered with by the inclosure of the tracks, then it would be excused from fencing. If the evidence should show that danger to employees was but little to be apprehended at a given point with the exercise of proper care and caution upon their part, then the fact that that point was used occasionally to receive and discharge freight or passengers would not excuse the company from fencing, except to the extent that the public convenience required it, and if the public could be served by inclosing all but a small portion of the track, then so far only would the company be executed. *Toledo, St. L. & K. C. R. Co. v. Franklin*, 159 Ill. 99; *Toledo, St. L. & K. C. R. Co. v. Cupp*, 9 Ind. App. 244; *Railroad Co. v. Newbrander*, 40 Ohio St. 15.

The statute requires the railroad company to erect and maintain fences on the sides of the railroad "suitable and amply sufficient to prevent cattle, horses, sheep, and hogs from getting on the said railroad," except at the crossings of public roads and highways, and within the limits of towns, cities and villages, and to construct and maintain at all road crossings cattle-guards suitable and sufficient for the same purpose. The intention of the statute seems to be to require the complete inclosure of the railroad track by means of fences and cattle-guards, so as to prevent

54

access to the tracks at all points except at public crossings. The defendant's answer presents the issue that the locality was a part of its depot grounds, and that public necessity and proper regard for the safe operation of its business required that it be left unfenced. This issue was submitted to the jury by an instruction based upon this allegation in the answer. The amount of switching done at this point was shown to be very small, and the evidence as to the danger to employees if the railroad had been fenced is very meager and unsatisfactory. The only witness as to this was the section foreman at that point, and we are convinced that, upon the issue as to whether the safety of its employees required the locality to be unfenced, the defendant failed to establish its defense, and the jury were warranted in finding against it upon that issue.

There remains then the question whether the public convenience excused the railroad company from inclosing its tracks at the point where the hogs came upon the right of way. They were killed close to the elevator on the south side of the track, and apparently had passed from the rye field directly north across the tracks to the vicinity of the elevator. If, as we now hold, the statute requires the complete inclosure of the track with fences and cattle-guards at points where the company is required to fence, then an inclosure of that portion of the grounds would exclude the public from the shipping and receiving facilities afforded by the elevator, coal house and corn-cribs, and thus largely deprive it of the benefits afforded by the railway station. This the company is not compelled to do, and hence was excused from inclosing its tracks at that point. The doctrine of the former opinion is sound in the main, but it failed to give due weight to the necessity of complete inclosure by fences and cattle-guards at points where a railroad company is required to fence. The conclusion reached and the fourth paragraph of the syllabus to the former opinion are therefore set aside, and the judgment of the district court is

REVERSED.

SEDGWICK, C. J., concurring.

Railroad companies are not required to fence their station grounds, if free access to the grounds by the public is necessary for the public convenience in transacting business with the road. When, for the convenience of the public, free access to the station grounds is necessary, the railroad company is not required to fence any part of such grounds, so as to exclude the public from access thereto at any point. If domestic animals running at large go upon such station grounds, and as a result of such trespass are injured by the ordinary operation of the road, the company is not liable for damages so occasioned. The company cannot extend such station grounds beyond reasonable requirements for the convenience of the public and the safety of the employees of the company. It must fence its right of way so far as it can do so without unreasonably limiting the area and extent of its station grounds. In this case the animals in question were trespassing upon the station grounds of the company, and while so trespassing were injured by the ordinary operation of the company's trains. The defendant therefore is not liable. The fact that the animals before going upon the station grounds may have crossed the right of way at a point where the same should have been fenced is immaterial.

For these reasons, I concur in the conclusion reached.