HORACE E. BURNHAM, APPELLEE, v. CHICAGO, BURLING-
TON & QUINCY RAILWAY COMPANY; APPELLANT.

FILED JANUARY 9, 1909.  No. 15,367.

1. **Railroads:** INCLOSURE OF RIGHT OF WAY. A railroad company is not required to inclose that portion of its right of way, even outside of towns, villages and cities, and public highways, the inclosure of which by the construction of fences and cattle guards would be an increased danger to human life.

2. ———: INJURY TO ANIMALS: DIRECTING VERDICT. In an action charging a railroad company with failure to inclose its right of way, the defendant pleaded in excuse that to fence the same would unnecessarily endanger the lives of its employees. *Held*, That, as it plainly appeared from the evidence that the safety of the employees of the defendant company requires that the *locus in quo* remain uninclosed, the court should so declare, and withdraw consideration of the case from the jury.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Reversed.*

*James E. Kelby, F. E. Bishop* and *Fred M. Deweese,* for appellant.

*W. B. Comstock, contra.*

EPPERSON, C.

On its Lincoln and Denver line of road, about two miles southwest of Lincoln, the defendant maintains a station called "Burnham," which is not an incorporated town, village or city. At this station defendant has its sheep yards, barns and pasture, where sheep in transit are unloaded and cared for. There are no general stock yards, depot buildings, elevators, corncribs or coal houses at or near this station. In the sheep yards there are at times from 20,000 to 30,000 sheep, and several hundred cars are there loaded and unloaded during the year. This traffic averages 10 cars a day, and during the busy season a great many more; the maximum as shown by the evidence, amounting to 125 cars. The plaintiff herein owned and occupied a small tract of land in the shape of a right-angle triangle in the northwest corner of the southeast quarter of section 4, about 1,700 feet southwest of defendant's sheep yards. The hypothenuse of plaintiff's lot was about 10 rods long and formed the boundary line between his lot and the northerly side of defendant's right of way. The defendant's railway at this point runs in a northeasterly and southwesterly direction. This main track is in the center of its right of way, and 100 feet from the plaintiff's lot. The defendant has constructed and operates a side-track on the north side of its main track for the purpose of reaching the sheep barns, and connected the same with its main track by switches, one of which is at a point about 100 feet southwest of the intersection of the railroad with the south line of a public highway running east and west along the north side of plaintiff's property, and is therefore 100 feet from the plaintiff's land. About 12 years ago defendant constructed a fence along the line between its right of way and the plaintiff's property, which was later abandoned. The plaintiff, joining his lines of fence with the abandoned fence of the defendant, made an inclosure, and turned his horses therein. On July 5, 1906, one of plaintiff's horses escaped from the

lot by breaking through the abandoned fence, got upon the defendant's track at or near the switch, and there was struck and killed by one of defendant's trains. The plaintiff brought this action to recover the value of the horse, alleging negligence on the part of the defendant in not fencing its right of way. Defendant admitted that its right of way was not fenced at this point, and alleged that its tracks and grounds at the place in question were not such as could be lawfully inclosed with fences and cattle-guards; that to so inclose them would greatly hinder and obstruct the operation of trains, and unnecessarily endanger the lives of its employees. Upon trial the court submitted to the jury the issue thus presented by defendant's answer. This is assigned as error by the defendant on an appeal from an adverse judgment below.

The statute requires each railroad company to erect and maintain fences on the sides of its right of way sufficient to prevent cattle, horses, sheep and hogs from getting on the railroad, except at the crossings of public highways and within the limits of towns, cities and villages, and requires it to maintain cattle-guards at all road crossings sufficient to prevent cattle, horses, sheep and hogs from getting upon the railroad, and, for a neglect of this duty, the railroad company is made liable in damages for stock killed or injured thereby. A liberal construction has been placed upon this statute in cases where the fencing of the right of way at the place of the accident would render railroad facilities inconvenient to the public or dangerous to human life. *Chicago, B. & Q. R. Co. v. Hogan,* 27 Neb. 801, 30 Neb. 686; *Chicago, B. & Q. R. Co. v. Seveck,* 72 Neb. 793, 799. Manifestly the inclosure of the right of way at stations, although not within a platted or an incorporated town, city or village would be an inconvenience to the public. For this reason, a liberal construction is given to the statute in the cases above cited. Each of the above cases pertain to the liability of the company for the killing of live stock at such stations; but they recognize, also, that the company is excused from

fencing if the inclosure would necessarily render the service of employees more hazardous. The station here in controversy is not one established for the accommodation of the people in its vicinity; but it is, nevertheless, a necessary station, and one constructed for the proper care of live stock shipped over the defendant's line of road, and is needed for the proper expedition of its business. The volume of business done here and the amount of switching probably far exceeds that of any one country station in this state. Therefore with greater reason can it be said that the railroad company should be excused from inclosing its right of way. The evidence shows that the switch in controversy is in frequent daily use, and, although the inclosing of the right of way at the place where this switch is maintained would be of no inconvenience to the public, it would, nevertheless, be an in-increased danger to defendant's employees engaged in switching trains to and from the main line and side-track. It would be necessary for the inclosing of the right of way at this place to construct a lateral fence along the public highway and construct a cattle-guard within the rails of both the main and side-tracks at a point but 100 feet from the switch. The evidence shows that such a construction so near the switch would be an increased danger to defendants' employees engaged in transferring cars. That such a construction at a place frequently used for switching cars is an increased danger is well known, and would be recognized as such by the courts in the absence of specific evidence. The inquiry, therefore, should be as to the use of that part of the right of way and tracks. The court should ascertain whether or not the manipulation of trains or cars at the *locus in quo* is frequent and necessary. If this is admitted or proved, it necessarily follows that the establishment of wing-fences and cattle-guards would be an additional danger to trainmen. Under such circumstances, a railroad company is not only excused from inclosing its right of way, but it is its duty not to do so. The danger to live

stock should not be obviated, if by so doing human life is endangered.

Our decision depends upon whether or not it was for the jury to say that the defendant was guilty of wrong-doing in its failure to inclose its right of way. In *Chicago, B. & Q. R. Co. v. Sevcek*, 72 Neb. 799, it is said: "If it plainly appear from the evidence that the locality is one where the proper conduct of the business, considering both public convenience and the operation of the railroad with regard to the safety of the employees, requires that it be left unfenced, then the court may so declare; but where the question is one of doubt it is for the jury." In *Grondin v. Duluth, S. S. & A. R. Co.*, 100 Mich. 598, it was held as a matter of law "that at least as much of the track and grounds outside of the switches as is required and is in actual use for reaching these side-tracks is a part of the station grounds, to which the statutory requirement to fence does not apply." In *Rabidon v. Chicago & W. M. R. Co.*, 115 Mich. 390, it was held that the defendant conclusively established that the place was within the yard limits, and exempt from fencing. The judgment of the lower court was reversed because the case was submitted to the jury. That case is very similar to the one at bar so far as it relates to the use by the railroad company of the switch in controversy. In *Cole v. Duluth, S. S. & A. R. Co.*, 104 Wis. 460, it is said: "Where the grounds left unfenced and treated by a railway company as depot grounds are unusually extensive and the *locus in quo* is outside of and beyond the switches and side-tracks, and is not used as a place of access by the public or patron either for freight or passengers, and only for the pas or standing of trains, the question whether it is nec for and used as depot grounds is properly for th

Adhering to the rule last announced, this cided *Rosenberg v. Chicago, B. & Q. R. Co.*, 77 It was there held that the trial court erred in ing the case from the jury. That case ma tinguished from this, for it appears that ther

road company had not fenced within a quarter of a mile of the switch limits, and about half a mile from the place where the animals were killed. The facts in that case were such that reasonable minds might differ as to the defendant's obligation to inclose the right of way at the place where the cattle entered the right of way. In the case at bar it does not seem possible that reasonable minds can differ as to the defendants' duty in this regard. In attending to the duties of switching, trainmen are required to step between the cars along the train at and near the switch, and are frequently required to be in close proximity to or even jumping to and from moving trains, or to ride upon the sides thereof. In the performance of these duties both night and day, the existence of cattle-guards and fences is a continuous increased danger, which it is the duty of the railroad company to avoid. In 3 Elliott, Railroads (2d ed.), sec. 1194, it is said: "The exemption of switch grounds is founded on the danger to employees which would necessarily result were the tracks fenced. The safety of the employees at points where they almost continually pass up and down the track in the performance of their duties is far more important than would be the safety afforded to animals and property from the erection of fences at such tracks." In the case at bar it appears that not only would trainmen be endangered, but, also, that shippers accompanying their sheep would probably encounter the same dangers as do the trainmen in and about the *locus in quo*. Undoubtedly the jury should be permitted to decide the reasonableness unreasonableness of such excuses pleaded by a rail company, where the evidence leaves a doubt as to gerous character of such improvements, or in any re the place in controversy is near a switch of l use only, or at a siding used infrequently, and e centers of active commercial industry. But the character of the evidence in this case. The controversy is not one established for the occe of the defendant in permitting its trains to

pass, but one which is in continuous daily use of the company in the transferring of sheep to and from its yards, and, under these circumstances, the facts being established by uncontradicted evidence, it was the duty of the court to withdraw the consideration of this question from the jury, and to direct a verdict for the defendant as requested.

We recommend that the judgment of the district court be reversed and this cause remanded for further proceedings.

DUFFIE and GOOD, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is reversed and this cause remanded for further proceedings.

REVERSED.

ROSE and DEAN, JJ., not sitting.

LETTON, J., concurring.

I concur in the opinion for the reason that to hold otherwise at this time would be to change the law which has been in force in this state since the case of *Chicago, B. & Q. R. Co. v. Hogan,* 30 Neb. 686. In that case it appeared that, if that portion of the depot grounds not within the city limits had been fenced, it would have required the construction of cattle-guards and wing-fences across the track. It was stipulated in that case that it would be unsafe to the railroad employees if cattle-guards and fences were erected. To quote from the opinion: "It is stipulated by the parties that it would be inconvenient and unsafe to employees of the road if cattle-guards and fences were erected there. Such guards within station grounds could not be otherwise than exceedingly dangerous to those whose duty it is to attend to the switching of cars. This work of necessity is done at stations, and freight cars must be coupled and uncoupled by a person standing on the ground. To perform such labor with cattle-guards constructed across the tracks, within station

grounds, would not only be perilous to the life and limb of the employees, but would greatly interfere with the proper discharge of its duties as a carrier." While Burnham is not a passenger station, it is a station for loading and unloading live stock, and much more switching is done there than at many regular stations, and it is the undisputed evidence that the placing of the required cattle-guards would be dangerous to the men employed in the necessary switching operations. If this were a new question, I would be in favor of holding strictly to the letter of the statute and leaving its amendment to the legislature, for a defective law is usually speedily amended if enforced in all its strictness, but, since the law of the *Hogan* case has been followed, and since this construction is in favor of life and limb, I do not think it well to depart from the established rule.

In my judgment the whole matter of relieving railroad companies from the statutory duty to fence at points outside of towns, cities and villages, where fencing would interfere with the convenience of the public or the proper operation of the railroad with regard to the safety of its employees and the public generally, should be committed by the legislature to the discretion and supervision of the state board of railway commissioners, who are much better fitted to determine the need of such relief than the courts are, and should not be left to be determined by the courts after accidents have happened.

Reese, C. J., dissenting.

I cannot agree to the holding in this case. It is provided in section 1, art. I, ch. 72, Comp. St. 1907, that railroad corporations shall erect and maintain fences on the sides of their railroads, "suitable and amply sufficient to prevent cattle, horses, sheep, and hogs from getting on the said railroad, except at the crossings of public roads and highways, and within the limits of towns, cities, and villages, * * * and when such fences, * * * or any part thereof, are not in sufficiently good repair to

accomplish the object for which the same is·herein pre-
scribed, is intended, such railroad corporation and its
agents shall be liable for any and all damages which shall
be done by the agents, engines, or trains of any such cor-
poration." It is provided by section 2 of the same act,
that, in case of failure to fence as required in the first
section, the company "shall be absolutely liable to the
owner of any live stock injured, killed, or destroyed." The
language of these sections could not well be made any
stronger or more definite. There are two exceptions, and
only two, in the act. The railroad company is exempted
from liability only at the crossings of public roads and
highways, and within the limits of towns, cities, and vil-
lages. In all other cases the companies are liable for the
value of live stock killed upon their tracks. It·is con-
ceded that the place where plaintiff's horse was killed
does not come within either one of the exceptions. Then
what legal right or authority have the courts to read into
the act any other exception? I known of none. Courts
are not established for the purpose of amending or ex-
plaining away any part of a valid law enacted by the law
making power, which is the supreme power of the state.
The case of *Chicago, B. & Q. R. Co. v. Hogan*, 27 Neb.
801, on rehearing, 30 Neb. 686, is not in point, for the
court held that the place where the animal was killed was
within one of the exceptions prescribed by the statute.
*Chicago, B. & Q. R. Co. v. Scvcek*, 72 Neb. 793, on rehear-
ing, 72 Neb. 799, goes to the limit, the opinion being based
largely upon the question of the convenience of the public
in having access to the station. In this case the public
has no possible interest in the existence or nonexistence
of the fence, so far as the public convenience is concerned,
and the fence could not interfere with the operation of
defendant's trains, nor the safety of human life. I very
much doubt if the safety of defendant's employees could
be taken into consideration in any event, as the act re-
ferred to makes no such exception. Then, again, to say
that the companies may create a "danger point" at any

place on the line of their railroad and thus set aside the statute at their own pleasure was never intended by the legislature.

There is another reason why I think this decision is wrong. The record shows beyond all question that defendant had its road fenced at the point where the horse was killed but had not kept its fence "in sufficiently good repair" to prevent live stock from going upon its tracks. The fence, standing, as it was, on the line of the right of way, was equivalent to a representation that it would be maintained, and to an invitation to plaintiff to join his fence to it, and that it would be adequate to turn stock. Plaintiff joined his fence to that of defendant, and placed his horses within the inclosure. There is no evidence in the record tending to show that any objection to this was ever made by defendant, or any suggestion that it was its purpose to allow the fence to become insecure.

While no error is shown by the record to the prejudice or disadvantage of defendant, yet I think the court erred in submitting the whole question to the jury. To my mind the only question was: "Did the evidence show that the place where plaintiff's horse was killed came within any of the exceptions contained in the statute?" If not, plaintiff was entitled to recover the value of the horse killed. The proofs all showed that it did not. No one claimed otherwise. This being true, by the plain and unequivocal language of the statute, plaintiff was entitled to a judgment for the value of the horse. There is no question here as to what the statute ought to be. Courts should only inquire as to what it is. The fact that a statute, if otherwise valid, is more strict in its provisions than the court may think it should have been, furnishes no authority for the avoidance of its terms, or otherwise changing it, but all courts should be governed by it. The changes, limitations, and exceptions are for the legislature. I am unable to see any reason why the judgment should not be affirmed.