GEORGE DE GRAW, APPELLANT, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLEE.

FILED OCTOBER 13, 1917. No. 19254.

1. Railroads: INCLOSURE OF RIGHT OF WAY. Sections 6035, 6036, Rev. St. 1913, construed, and *held* that railroads are thereby required to erect and maintain suitable and amply sufficient fences and cattle-guards on the right of way of each road to prevent live stock from entering thereon, except at public crossings, and also to effect a complete inclosure of the track, except in cities, towns, villages, and necessary shipping stations, and also except in such proximity to switches as would imperil the lives of employees.

2. ———: Injury to Animals: Question for Jury. The record examined, and *held* that the question of plaintiff's claim for damages for cattle killed by defendant's train should have been submitted to the jury.

3. ———: Inclosure of Right of Way. "A railroad company is not required to inclose that portion of its right of way, even outside of towns, villages, and cities, and public highways, the inclosure of which by the construction of fences and cattle-guards would be an increased danger to human life." *Burnham v. Chicago, B. & Q. R. Co.*, 83 Neb. 183.

Appeal from the district court for Morrill county: Ralph W. Hobart, Judge. ·Reversed.

*K. W. McDonald,* for appellant.

*E. E. Whitted, Wright & Mothersead* and *T. M. Stuart,* contra.

Dean, J.

Plaintiff commenced this action against defendant to recover $512, the alleged value of 7 head of cattle owned by him that were killed by one of defendant's trains on its right of way. At the conclusion of the testimony the court directed the jury to return a verdict for defendant. From a judgment rendered thereon, plaintiff appeals.

The cattle that were killed, with 16 other head belonging to plaintiff gained access to defendant's right of way within the unincorporated village of Northport at a point where there were cattle-guards and wing-fences, but which were in so dilapidated a condition as to be useless for the purpose of turning stock. It appears from the testimony of the trainmaster that the cattle-guards at this particular point, and over which plaintiff's cattle entered upon the right of way, were a menace to the safety of trainmen and employees in switching and handling trains. In such case defendant was therefore absolved from the duty of maintaining cattle-guards at that place. *Burnham v. Chicago, B. & Q. R. Co.,* 83 Neb. 183. But that circumstance, significant as it is, does not decide the question before us, when we consider in all of its bearings the object and the purpose that must have

been in the legislative mind when the railroad fencing statutes were enacted. In the present case the cattle, after entering the right of way, went north thereon to the place where they were killed, which is about 1½ miles beyond defendant's switches and beyond a "Y" maintained by defendant.

Section 6035, Rev. St. 1913, provides, among other things, that the railroad company shall erect and maintain fences on both sides of the track "suitable and amply sufficient to prevent cattle, horses, sheep and hogs from getting on such railroad, except at the crossings of public roads and highways, and within the limits of towns, cities and villages."

In the absence of direct legislative expression this court has properly, as we believe, and for the best of reasons, construed the law in former decisions to mean that a railroad is not required to maintain fences or cattle-guards at any point, even outside of towns, villages and cities, where such inclosure would prevent proper access to station facilities or where it would increase the danger to the lives of its employees in handling its trains. The law has been properly so construed because, in view of the perils that are incident to trainmen in the train service and that are always attendant upon the switching and handling of trains, it is reasonable to believe that such, for humane reasons, was the legislative intent, and our interpretation seems properly to come within the purview of the law. *Chicago, B. & Q. R. Co. v. Sevcek*, 72 Neb. 793. On this point there is no longer controversy in this state. But neither the *Burnham* nor the *Sevcek* case applies to a situation where stock was killed, as in the present case, on the right of way, but perhaps a mile distant from a point where suitable cattle-guards could have been maintained that would not be a menace to the safety of employees, and more than a mile distant from the point of entry. It may also be observed that the public is concerned that the right of way be kept clear of herds of live stock. The violent impact of a rapidly moving train against a

De Graw v. Chicago, B. & Q. R. Co.

herd of full-grown cattle roaming over the tracks or lying down between the rails is a situation laden with possibilities of peril to passenger and trainmen alike.

Section 6036, Rev. St. 1913, provides: "Any railroad company hereafter running or operating its road in this state, and failing to fence on both sides thereof against all live stock running at large at all points, shall be absolutely liable to the owner of any live stock injured, killed or destroyed by their agents, employees or engines."

The record before us discloses a situation where a railroad right of way, at best but a narrow lane, was inclosed on the sides only, and where the fences increased rather than diminished the danger to a herd of cattle thereon at a point a mile or more distant from an opening where they might escape. The spirit of the law, if not its very letter, requires a railroad to so fence and inclose its tracks, aside from the exceptions noted in section 6035, and also except at such points where the inclosure would endanger the lives of its employees, in such manner as to prevent stock from entering the right of way. It is clearly evident that such is the intent and ultimate purpose of the law.

In view of the record, it is not a strained construction of the law in question to hold that defendant has not complied with its provisions. The question of defendant's liability should therefore have been submitted to the jury. The judgment of the trial court is reversed for further proceedings in accordance with law.

REVERSED.

SEDGWICK, J., concurring.

The question presented in this case is an interesting one. The statute (Rev. St. 1913, sec. 6035) provides that the railroad company shall erect fences along the line of the track "suitable and amply sufficient to prevent cattle, horses, sheep and hogs from getting on such railroad." The same section says that these fences are not to be erected at crossings of public roads and highways,

and within the limits of towns, cities and villages. The statute, taken literally, does not make any exception where inclosing the right of way would endanger the lives of employees, and yet we have, and I think with great reason, considered that the legislature must have intended that.

The animals in this case were not injured at any place where it would endanger the lives of anybody to fence the track so as to keep them off. If we construe the statute so that the roads shall not be compelled to fence their track where by doing so they would endanger the lives of their employees, should we not also necessarily conclude that it was intended to require them to so fence their tracks as to prevent animals from going from these places where they are not required to fence onto the track where they are required to fence? Wherever a private way crosses the track suitable cattle-guards are required. The statute has been construed to intend that station grounds where private parties must pass from place to place in the transaction of the ordinary business of the road need not be fenced. These grounds are essentially a private way, and the statute clearly means that cattle-guards must be so placed as to prevent animals from going upon the tracks from such private way. If we construe the statute so literally as not to require the defendant to prevent animals from going upon the right of way from these private grounds of the company, we must with greater reason overrule our former decisions and apply the letter of the statute so as to require the company to either fence their private grounds or assume liability for damages to animals trespassing thereon.

It is plain that the intention of the people who made this law through their legislature is that animals shall not be allowed by the railroad company to run upon their main lines, and I think that the statute should be so construed as to enforce that provision. This would require that the railroad company be held liable in this case under the facts as represented in this record.