EDWARD BRIEGEL, APPELLANT, V. UNION PACIFIC RAIL-
ROAD COMPANY, APPELLEE.

FILED JULY 7, 1924.  No. 22826.

1. **Railroads: NEGLIGENCE: QUESTION FOR JURY.** Where a finding of fact is required upon the necessity for an open and unfenced station ground, at the point at which cattle entered upon a railroad track, the rule governing the submission of questions of fact to the jury applies as in other cases.

2. **Instructions examined, and held properly given and refused.**

APPEAL from the district court for Lincoln county: J. LEONARD TEWELL, JUDGE. *Affirmed.*

*Hoagland & Carr,* for appellant.

*C. A. Magaw, Thomas F. Hamer,* and *Thomas W. Bockes,* contra.

Heard before MORRISSEY, C. J., DEAN and GOOD, JJ., BLACKLEDGE and REDICK, District Judges.

BLACKLEDGE, District Judge.

This action was instituted to recover damages for the killing of certain cattle by defendant's railroad train at the point of Nichols station, or siding, on November 25, 1920. The direction of the railroad line is east and west, and at this point it consisted of a double-track main line and a connected switch track on the south side thereof. Somewhat west of the east end of the switch track a public highway extended north and south across the tracks. The station grounds were occupied by a beet dump, scale house, two large piles of beets containing approximately 1,500 tons, two or three cars loaded or in process of loading, and some wagons used in hauling beets from the piles to the cars, all of which were grouped approximately 300 to 350 feet west of the highway crossing and on or adjacent to the switch track, which was 33 feet from the main-line track. The right of way and grounds were under fence, except that on the east side thereof a "wing" fence which had extended southward from the cattle-guard at the crossing, along the west side of the highway to connection with the east and west fence along the south boundary of the right of way grounds, was down. There originally was a gate in this wing fence which provided entrance to the grounds, but at this time the fence was down and the space, about 135 feet, was used by the plaintiff and other beet haulers for ingress and egress. The principal use of this siding was for the loading and shipping of beets. Two or three cars were shipped daily during the season, which commenced about October 1 and lasted approximately two months. At the time of this accident the plaintiff and some others had not completed delivery of their beets and the two piles of beets remained to be loaded and shipped out. The siding was also used for the occasional outward shipment of hay and alfalfa and the reception of a car of corn.

Plaintiff owned the land nearby bordering on the west side of the highway and resided in view of this station and crossing. Upon the occasion in question his cattle strayed

out upon the highway and northward toward the railroad track. Plaintiff states that some of them entered the grounds at the unfenced space mentioned and went toward the piles of beets. Seeing them, he went across from his residence to the tracks slightly to the west of where the cattle were, for the purpose of driving them off and out of danger. While he was so engaged, defendant's train came from the west and at or near the crossing struck and killed a number of the cattle, which, when found, were all lying in or east of the highway. The evidence is that there is a clear view to the westward along the tracks for a distance of a mile or more. The engineer in charge of the train states he first saw the cattle when 100 feet from them, and that they were down on the public highway and he could not have stopped before striking them.

The plaintiff says: "When I seen these cattle around there by the beet dump and scale, and there was some of them in between the switch and the other track, and then I seen them up there, so I walked on up to the switch track, and from there on I seen some walking on the track, and then I started to go across the track to get them back again, and then just as I was going to cut across the track I looked back and saw the train coming, and then after the train came I just stepped back to let her go by, and then as it went by me, as a rule there is—I had gotten in the steam, and then the steam and smoke hit the ground, and the first thing I know the cattle was running and they were running up toward the track, and then I just thought to myself he is going to hit those cattle, and then after he was by me, then I seen where the cattle laid. That is the way it went."

Upon cross-examination, he states that he had not looked westward to see whether a train was coming, nor made an attempt to flag the train.

The verdict and judgment were for the defendant, and the assignments of error presented by the apppellant have relation to the giving and refusal of certain instructions by the trial court. We believe that a sufficient reference to the evidence has been made for the proper understanding

of the theory of the case as it was submitted by the instructions.

The court in the instructions defined negligence and contributory negligence, stated that the burden of proof was upon the defendant to prove any contributory negligence on the part of plaintiff, and stated in proper terms the rule of comparative negligence. The plaintiff contends that there was no evidence sufficient to authorize the submission to the jury of the questions of contributory negligence or of comparative negligence. We do not think this contention is sustained, because in this same connection the court gave an instruction which was requested by the plaintiff, and which we also think was proper to be given, covering the application of the doctrine of "the last clear chance" as applied to the duty of the defendant's engineer in the operation of the train on approaching the place of the accident, and thereby authorized the jury to determine whether the engineer, by the exercise of reasonable care and precaution under the circumstances in looking ahead, could have ascertained that the cattle were upon and about the track and in a position of danger, and could have thereupon stopped his train and avoided the collision. We think it clear that the plaintiff was on the ground and knew of the possible danger before the train approached, and that it was entirely proper to submit the question to the jury whether he on his part exercised reasonable care and precaution in looking for the approaching train or in attempting to signal the same. The duty apparently lay upon both the plaintiff and the engineer, seeing and appreciating the danger, to do what they reasonably could do to avoid the consequences, and the question whether they had done so was properly submitted by the court.

Appellant makes further complaint that there was error in the giving of instruction No. 9, in that it improperly limited the application of the previous instruction which submitted the rule of "the last clear chance." This instruction No. 9 was to the effect that it was not incumbent upon the engineer in the exercise of reasonable care to com-

mence to stop his train simply because the cattle were upon the right of way, if they were in no place where injury to them could be reasonably expected, but was only required to do so if or when the cattle were in such position as would cause a reasonably prudent person to believe that they were in danger of injury. This, we think, correctly stated the law and was properly explanatory of the application to be made of the doctrine stated in the previous instruction.

The assignment of error upon the refusal of the court to give instruction No. 3 requested by plaintiff cannot be sustained, because that instruction, as tendered, both omits the quality of reasonableness as applied to the care to be exercised by the engineer in keeping a lookout and in stopping the train, and submits only the question whether it was possible for him to have seen the cattle on the track and to have stopped the train. It was also objectionable in that the first paragraph charges the jury that as a matter of law it would have been negligence on the part of the engineer not to see the stock if he had looked where the view was unobstructed at least 40 rods before reaching the point. This instruction was therefore properly refused, as was also No. 4, which, although it had reference to the cattle having been frightened and caused thereby to run upon the crossing, also contained a clause to the effect that the defendant was as a matter of law required to keep the grounds at which the accident occurred fenced. This matter of fencing was the principal issue in the case, and the element of the cattle being upon the crossing was, we think, sufficiently covered by the other instructions.

The appellant further argues that the court erred in submitting to the jury the question whether the grounds at the station were such as were by law required to be fenced, and insists that the court should have determined that question as a matter of law and told the jury that the defendant railroad company was required to keep its right of way, at the point in controversy, fenced. Upon this question the court stated to the jury the requirements of the stat-

ute as interpreted by previous decisions of this court, and left it to the jury to determine whether, under the circumstances of their use, the station or grounds in question were such as were required under the law to be fenced. No complaint is made as to the form of the instructions by which this question was submitted, the complaint being solely as to the submission of the question for the determination of the jury; and it is urged that the court in its interpretation of the statute by former decisions broadened the scope thereof and added certain exceptions which were not within the legislative contemplation. It might be sufficient in this regard to say that the statutory interpretation criticized was made 20 years ago; and if the court was wrong in determining the intent of the legislature, that body has had ample opportunity to remedy the error by corrective legislation. Not having done so, we must assume that the court was correct in its interpretation. Nor do we think that the determination of this present case shall serve to widen or extend the application of the rules already made. The case in that regard is, we think, governed by the determination of this court in the case of the *Chicago, B. & Q. R. Co. v. Sevcek*, 72 Neb. 793, 799; and is also supported by *Rosenberg v. Chicago, B. & Q. R. Co.*, 77 Neb. 663; *Cole v. Duluth, S. S. & A. R. Co.*, 104 Wis. 460.

Finding no error in the record, the judgment of the trial court is

AFFIRMED.

Note—See Railroads, 33 Cyc. pp. 1307, 1313, 1320.