Quackenbush, Adm'x, etc. vs. Wisconsin & Minnesota R. R. Co.

the plaintiff as a physician, or his inability to make a diagnosis, or his assumed knowledge. For these reasons that portion of the libel is held to be libelous *per se*.

As to the words between the innuendoes, it is virtually conceded that they are actionable *per se*, if there is any allegation or colloquium in the complaint connecting them with the plaintiff, or showing that they were part of the publication in question. The colloquium referred to, with the averment that the defendant published of and concerning the plaintiff the article set forth, followed by the article giving a detailed account of the plaintiff's treatment of the children, with the characterization already mentioned, followed by the remaining portion of the article, connected therewith by the words, " as the health report of our state says," seems to sufficiently indicate, not only that what follows was a part of the publication, but a further characterization of the plaintiff's conduct in the transaction detailed. Sec. 2677, R. S.; *Bradley v. Cramer*, 59 Wis. 309.

*By the Court.*— The order of the circuit court is affirmed.

QUACKENBUSH, Administratrix, etc. vs. WISCONSIN & MINNESOTA RAILROAD COMPANY.

*February 4 — March 3, 1885.*

| 62 | 411 |
| 80 | 302 |
| 62 | 411 |
| d89 | 580 |
| 62 | 411 |
| 90 | 103 |
| 62 | 411 |
| 98 | 645 |

RAILROADS: FENCES: CONSTITUTIONAL LAW. *(1) Statute imposing absolute liability for failure to fence, constitutional, and (2) applies to employees. (3) Waiver: Knowledge of employee.*

1. A statute imposing an absolute liability for injuries resulting from a failure to fence a railroad, and excluding the defense of contributory negligence, is within the police power and is constitutional.
2. The word " persons " in sec. 1810, R. S. (ch. 193, Laws of 1881) includes the employees of the railroad company.
3. An employee of a railroad company continuing in such employment with knowledge of the fact that the road is unfenced, does not thereby waive his right to recover for injuries caused by the want of a fence.

APPEAL from the Circuit Court for *Chippewa* County.

Action to recover damages for the death of the plaintiff's intestate, alleged to have been caused by the failure of the defendant to fence its line of railroad as required by law. The facts alleged in the complaint will sufficiently appear from the opinion. The defendant appealed from an order overruling its general demurrer to the complaint.

For the appellant there was a brief by *Edwin H. Abbot,* attorney, and *Howard Morris,* of counsel, and the cause was argued orally by *Mr. Morris.* They contended, *inter alia,* that the statute (sec. 1810, R. S., as amended by ch. 193, Laws of 1881) imposing an absolute liability upon the railroad company and debarring it from interposing any defenses which at common law would defeat the action, is in violation of sec. 1, art. XIV, Const. of U. S., and of sec. 9, art. I, Const. of Wis. As to what is meant by the terms "law of the land". and "due process of law," see *Hoke v. Henderson,* 4 Dev. 1–15; *Vanzant v. Waddel,* 2 Yerg. 260, 269, 270; *Saco v. Wentworth,* 37 Me. 165–171; *State v. Doherty,* 60 id. 504–8; *Zeigler v. South & N. Ala. R. R. Co.* 58 Ala. 594; *S. C.* 20 Am. R'y Rep. 463; *Wright v. Cradlebaugh,* 3 Nev. 341–9; *Taylor v. Porter,* 4 Hill, 144–6; *East Kingston v. Towle,* 48 N. H. 57, 59–61; *Jones v. Robbins,* 8 Gray, 342–3; *Greene v. Briggs,* 1 Curt. C. C. 311–325 *et seq.; People ex rel. Witherbee v. Supervisors,* 70 N. Y. 228–234; *Kalloch v. Superior Court,* 56 Cal. 229; *Hincks v. Milwaukee,* 46 Wis. 559; *Murray v. Hoboken L. & I. Co.* 18 How. 272; *Lawson v. Jeffries,* 47 Miss. 686; *Westervelt v. Gregg,* 12 N. Y. 202; *Wynehamer v. People,* 13 id. 390–418, 432–441; *Durkee v. Janesville,* 28 Wis. 464; *Rowan v. State,* 30 id. 129; *Culbertson v. Coleman,* 47 id. 198, 201. From these cases the following propositions of law are logically derived: (1) Sec. 9, art. I, Const. of Wis., guaranties to every citizen of the state, natural or artificial, every substantial right which, at the time the constitution was adopted, was recognized and pro-

tected by and formed part of the "law of the land," or was incident to "due process of law." (2) Substantial rights under the "law of the land," or incident to "due process of law," are those which existed at the common law as adopted and applied in this country prior to the formation of the several constitutions containing the guaranties relied upon. (3) Legislative enactments destructive of such substantial rights are neither "law of the land" nor "due process of law." The law in question is also void because it denies the "right of trial by jury" guarantied by sec. 5, art. I, Const. of Wis. That guaranty must be interpreted to mean that parties litigant are entitled to have submitted to the jury for determination all the issues which at common law should and would have been submitted to them. If any question of fact or liability is conclusively presumed against a party, this is not due process of law. See *Plumer v. Supervisors*, 46 Wis. 163–185; *Rood v. C., M. & St. P. R'y Co.* 43 id. 153–4; *Corbin v. Hill*, 21 Iowa, 70; *Taylor v. Miles*, 5 Kan. 498; *Norval v. Rice*, 2 Wis. 22; *Gaston v. Babcock*, 6 id. 503; *Bennett v. State*, 57 id. 69–75. This act cannot be sustained as a penal law. The action provided for, for the recovery of damages, is strictly *remedial* in its nature; while the action provided for by sec. 1813, R. S., is strictly *penal*. *Curry v. C. & N. W. R'y Co.* 43 Wis. 665. A penalty of unliquidated damages is not, to say the least, a common attribute of penal legislation. If sec. 1810 were a penal statute, and if the words "persons thereon" could be construed to embrace employees of the company injured while in its voluntary service upon a line of railroad well known by them to be unfenced, by reason of the failure to fence as required by law, the law could certainly not be sustained. See *Fleming v. St. Paul & D. R. R. Co.* 27 Minn. 111, 114. Sec. 1810 is also invalid as penal legislation because it violates sec. 2, art. X, Const. of Wis., which sets apart for the school fund "the clear proceeds of all fines

collected in the several counties for any breach of the penal laws." *Dutton v. Fowler*, 27 Wis. 427, 430; *Lynch v. Steamer "Economy*," id. 69; *Atchison & N. R. R. Co. v. Baty*, 6 Neb. 37–45. It is also obnoxious to the general fundamental law prohibiting class legislation.

*H. H. Hayden*, for the respondent.

COLE, C. J. It is alleged in the complaint that the plaintiff's intestate, while engaged as a conductor in running a train upon the defendant's road in the exercise of ordinary care, was killed by the train being thrown off the track, and the cars wrecked, in consequence of the train running over a steer or heifer which had strayed upon the track. It is alleged that the railroad track at the place where the animal got upon the same, and where it was run over by the train, or where the accident occurred, was wholly unfenced, and had never been fenced, though it was outside of depot grounds, and was not at a farm or highway crossing. Also that there was no pond, watercourse, ditch, embankment, or other sufficient protection, rendering a fence unnecessary at that place to prevent cattle from straying upon the right of way of the defendant. It appears that the railroad had been built and operated over this track for more than three months, while that portion of the road had remained wholly unfenced, and exposed to the inroads of cattle upon the same. It is alleged that the accident was caused by the negligence of the defendant in failing to fence its road, thereby permitting cattle to come upon and be run over on its track. There are other acts of negligence stated, but the failure to fence was the principal ground of liability relied on upon the argument.

Our statute makes it the duty of every railroad corporation operating a railroad to erect and maintain on both sides of any portion of its road (depot grounds excepted) sufficient fences as prescribed; also cattle-guards at crossings, in order

to prevent cattle or other domestic animals from going on such road. The fences are required to be built within three months from the time of commencing to operate the road, so far as it is operated. It is further enacted that "until such fences and cattle-guards shall be duly made, every railroad corporation owning or operating any such road shall be liable for all damages done to cattle, horses, or other domestic animals, or persons thereon, occasioned in any manner, in whole or in part, by the want of such fences or cattle-guards; but after such fences and cattle-guards shall have been in good faith constructed, such liabilities shall not extend to damages occasioned in part by contributory negligence, nor to defects existing without negligence on the part of the corporation or its agents." Ch. 193, Laws of 1881; sec. 1810, R. S. Now, it will be at once seen that this provision not only makes it the duty of the company to build its fences within a prescribed time after commencing operating the road, but it also imposes an absolute liability for its failure to do so when damages to cattle and other domestic animals, or to persons on the road, are occasioned in any manner, in whole or in part, by the want of such fences or cattle-guards. The language is clear, positive, and unqualified, and the facts stated in the complaint present a case fully within the spirit and letter of the enactment. The only room for a possible doubt as to the meaning of the provision is whether the word "persons," as there used, was intended to include and does embrace the employees of the company. We perceive no good ground for making them an exception to the absolute liability which the statute imposes upon the corporation.

The validity of this statute is challenged in an elaborate argument by defendant's counsel, because it excludes contributory negligence as a defense to an action brought for damages occasioned to a person or animal by want of a fence. It is doubtless true that the provision imposes an

absolute liability in such a case. It certainly excludes the defense of contributory negligence where the corporation fails to perform the duty which the statute prescribes in the first instance. This is in the nature of a penalty for the neglect of the corporation to conform to a regulation which the legislature seems to consider essential for the protection of life and property. We think there can be no doubt but such laws fall within the police power. Whether the rule of absolute liability in such a case is founded in wisdom and sound public policy it is not for the courts to decide. In the cases which have come before this court involving the validity of such laws in one aspect or another, they have been deemed as within the scope of legislative authority. Most of the cases are referred to by the chief justice in *Curry v. C. & N. W. R'y Co.* 43 Wis. 665, and need not be considered here.

The question in this case is, Does the provision violate any principle of the state or federal constitution? Without going into any discussion of that question, we state our conclusion that it does not. Suppose the legislature should enact that, as to any road thereafter to be built, such corporation should erect suitable fences along its track, within three months from the time of commencing to operate the same, so far as the road was operated, and a failure to build such fences should work a forfeiture of its franchises? Could the constitutionality of such a law be successfully assailed or questioned? Such a law might be harsh and very unwise, but it would be difficult, we think, to overthrow it, as being a violation of any constitutional right or privilege.

But this discussion is not strictly called for in this case. It is alleged that the plaintiff's intestate was in the exercise of ordinary care when the train was thrown from the track by collision with the animal, and he was killed. What, therefore, has been said upon the point that contributory negligence is not an element in determining the defendant's

responsibility, is really a question not raised by the demurrer. But we may add in this connection that the law requiring railroad corporations to erect and maintain fences along their track has been changed since its first enactment in 1860. The manifest tendency of the legislation is to impose a more stringent rule of responsibility upon them in order to secure an observance of a salutary police regulation. Even under the earlier statute it was held that an absolute liability was imposed for a failure to fence; but these cases were overruled in the *Curry Case*. In the latter case, which arose under ch. 119, Laws of 1872, it was held that in an action against a railroad company for an injury occasioned by failure to erect fences on the line of its road, the contributory negligence of the plaintiff would be a defense as in other actions for negligence. But, as was assumed on the argument on both sides, and as we have intimated, the present statute apparently excludes the defense of contributory negligence for an injury resulting from the failure of the company to erect fences. This is in the nature of a penalty to compel such corporations to perform a positive duty imposed upon them by law.

It appears from the complaint that the plaintiff's intestate had been for some time in the employ of the defendant as conductor, running trains over this road. It is said that he was chargeable with notice that there was no fence along the right of way, and by continuing in the service without objection he voluntarily assumed the risk of the dangers known to him. To this position the plaintiff's counsel makes this answer: (1) That the most that can be claimed is, if deceased knew that the road was unfenced, as he doubtless did, he must also be presumed to know that the statute protected him in express terms by declaring that the company should be liable for all damages which he might sustain, occasioned in any manner, in whole or in part, by the want of a fence; and (2) that by continuing in his employment

he at most only accepted apparent risks, and not the possible danger of cattle straying upon the track, when it does not appear that he knew that cattle were in near proximity to the road at that place, or likely to be on the track. To this sufficient answer may be added the further reason that the deceased might well act upon the presumption that the defendant would proceed to perform, without unnecessary delay, the duty which the statute imposed upon it. Consequently we see no ground for holding that the deceased waived all right to recover for injuries occasioned by want of a fence, by continuing in the employment of the defendant.

*By the Court.*— The order overruling the demurrer to the complaint is affirmed.