ZAVITOVSKY, Administrator, Appellant, vs. CHICAGO, MIL-
WAUKEE & ST. PAUL RAILWAY COMPANY, Respondent. ·

*October 5—November 16, 1915.*

*Railroads: Action for death of employee: What law governs: Inter-
state commerce: Burden of proof: Evidence: Sufficiency.*

1. Where the complaint in an action for death caused by negligence
   predicated liability under the state statutes, but defendant af-
   firmatively claimed that the case fell under the federal Employ-
   ers' Liability Act, defendant had the burden of proof on that
   proposition.

2. Coal which was piled on a dock and had passed out of interstate
   commerce was loaded upon cars and thence dumped into hop-
   pers which projected into a sunken room or basement. From
   the hoppers it was taken by conveyors to a bin, was weighed out
   from such bin, and then went into another bin, from which it
   was spouted into the tenders of locomotives employed in inter-
   state commerce. Railway employees were required every night
   to clean up, with shovels, the scattered coal from the floor of
   said sunken room and throw it into the conveyor, which carried
   it to the bins. While so doing one of them was fatally injured.
   The purpose of their work was primarily to clean the floor and
   the fact that the coal cleaned up finally reached the interstate
   locomotives was merely incidental. There were one or two men
   or crews of men between the deceased and the locomotives, as
   well as between the deceased and the coal pile on the dock.
   *Held,* that these facts did not show that the deceased when in-
   jured was engaged in interstate commerce.

3. Plaintiff's evidence in this case as to the description of the place
   of work, its surroundings and lighting, and also as to the man-
   ner in which deceased came to his death, is criticised as defect-
   ive.

APPEAL from a judgment of the circuit court for Milwau-
kee county: LAWRENCE W. HALSEY, Circuit Judge. *Re-
versed.*

*William L. Tibbs* and *George A. Bowman,* for the appel-
lant.

For the respondent there was a brief by *C. H. Van Alstine*
and *H. J. Killilea,* and oral argument by *Mr. Killilea.*

TIMLIN, J.    In this case against a railroad employer for
negligently, on January 2, 1913, causing the death of one of
its employees not engaged in shop or office work, the learned
circuit court directed a verdict for defendant.    This was
done apparently upon the ground that the evidence brought
the case within the federal Employers' Liability Act, and at
the same time conclusively showed assumption of risk by the
deceased under that act.    On the date above mentioned ac-
tions against employers for such injuries might fall under
the Compensation Act (sec. 2394—1 *et seq.* Stats. 1911) in
the cases therein mentioned, wherein there had been consent
to come under the terms of that act, or might fall under gen-
eral statutory regulations of the relation of master and serv-
ant as in the case of an employer having less than four em-
ployees, or an employer who neglected or refused to consent
as in the Compensation Act provided, or in the case of rail-
road employers the case might come under the federal Em-
ployers' Liability Act, or under sec. 1816, Stats. 1911, or
under the Compensation Act.    It is only with the railroad
class we have to do in the instant case.    This inquiry is still
further narrowed because the deceased employee was not en-
gaged in shop or office work.    The defendant was engaged in
interstate commerce, and the first question which presents it-
self is whether the deceased employee was at the time of his
injury also engaged in the same interstate commerce.    The
complaint manifestly predicated liability under the statutes
of this state and the defendant in its answer affirmatively
claimed that the case fell under the federal Employers' Lia-
bility Act.    It therefore had on this proposition the burden
of proof which usually falls upon the affirmative.    As a re-
sult of professional strategy or inadvertence, it makes no dif-
ference which, the case has been very imperfectly presented
by the evidence of both sides.    We first inquire whether de-
fendant has lifted the burden of proof resting upon it to show
that the deceased was at the time of his injury engaged in

interstate commerce.   We are informed by the evidence that he worked on the night shift, but what his duties were we do not know except that for about twenty minutes every night after 12 o'clock he, with four or five others, was required to clean up, with shovels, the scattered coal from the floor of a sunken or basement room, and in doing so to throw such coal into the conveyor, which carried it up into one or more elevated bins.   This coal had been scattered on the floor in the process of taking it by conveyors from several hoppers which projected into said sunken room.   The coal came to the hoppers from cars which were "dumped" into the hoppers.   It got into these cars by being loaded thereon from a pile belonging to defendant lying on or near a dock not far from the hoppers.   How the coal got on these cars we are not informed except what is suggested by the single word "dumped" applied to the unloading of the cars.   Whether the deceased was engaged in loading or unloading this coal, or whether there was one or two men or crews of men between the conveyor and the coal pile, we do not know.   It is much the same with the evidence tracing the coal cleanings from the floor to the tenders of locomotive engines which by stipulation were engaged in interstate commerce.   The coal was not fed from the bin where the conveyor left it into these locomotive tenders.   The evidence indicates that it had to be weighed out from this bin, and also indicates that it then went into another bin from which it was spouted into the tenders, so there must have been one or two men or crews of men between the deceased and the supplied locomotive as well as between the deceased and the coal pile on the dock.   The deceased may have taken part in the last delivery into the tenders of the interstate locomotives, but that is not shown.   It is shown that the coal in the pile on or near the dock had passed out of interstate commerce, and the one ground upon which it could be claimed that the deceased, at the time of his injury, was engaged in interstate commerce is that he was engaged in the performance of one

step in the transmission of this coal from that pile to the interstate locomotive for use in the latter as fuel. In cleaning up the floor deceased was not engaged directly in interstate commerce. His purpose and that of his employer was to clean up the floor, and there was no place to put the coal cleaned up except on the going conveyors, and the fact that it, with other coal and by the aid of other agencies intervening between deceased and the delivery to the interstate locomotive, finally reached the latter, was merely incidental. If deceased was at the time engaged in interstate commerce by reason of the foregoing facts, then so were the men between him and the coal pile loading and unloading cars, and for a stronger reason so were the men between him and the interstate locomotive weighing out the coal from the bin and delivering it directly into the tender. Only three illustrative cases need be noticed. *Pedersen v. D., L. & W. R. Co.* 229 U. S. 146, 33 Sup. Ct. 648; *Ill. Cent. R. Co. v. Behrens,* 233 U. S. 473, 34 Sup. Ct. 646; *Ruck v. C., M. & St. P. R. Co.* 153 Wis. 158, 140 N. W. 1074.

In the case first above cited the connection between the work in which the injured party was engaged at the time of his injury and interstate commerce was direct and immediate. The track, including the bridges, of a railroad used for interstate commerce trains, is always in use for that purpose, no matter what other purposes it may contemporaneously subserve. One engaged in the repairs of such track or bridge is engaged in a work which closely and immediately, without any intervening agency, furnishes an indispensable and direct aid in interstate commerce. In the second case above cited the injured man was a member of a switching crew at work in the yards. Within broad lines, as every court knows, the duties of such crew include assembling cars for the purpose of making up outgoing trains or parts of trains, and distributing some or all of the cars of the incoming trains. The interstate cars could not be assembled or distributed unless

local or intrastate cars of the same train which stand in the way were moved or disposed of. Interstate commerce could not be carried on where interstate and intrastate cars are mixed in the same train, as they nearly always are in freight trains, without moving the intrastate cars. Such movement is an operation essential to the carrying on of interstate commerce as long as switching is done as it is at present. The primary purpose of moving the intrastate cars is to deliver them to their destination, and the aid to interstate commerce secondary and incidental. Accordingly it was held that such member of a switching crew, injured while moving in the yard a car loaded with intrastate freight, was not within the act of Congress, although unquestionably the work he was doing was in aid of and essential to the carrying on of interstate commerce by transportation. In the instant case it appears from the evidence that the primary purpose of employer and employee was to clean up the floor, and the benefit to or aid to interstate commerce resulting therefrom was secondary and incidental. Had it been shown that deceased aided in delivering the coal upon the tender of the interstate locomotive and, as a step in assisting himself and his associates to perform that operation, cleaned up the floor of this room for twenty minutes every night, a different case might have been presented. Another phase of remoteness is considered in the case third above cited. But weighing these precedents as best we can, we are of the opinion that in the instant case the defendant has not lifted the burden of proof which rested upon it in this respect. It may be able to do so upon another trial.

We express no opinion upon the question of assumption of risk if the case should be finally found to come under the act of Congress, because the evidence may be quite different upon another trial and that question does not arise until after the case has been brought within the act of Congress. Neither do we express any opinion upon the merits of the case. The

plaintiff's evidence is very defective both with reference to the description of the place of work, the machinery, the platform, and the lighting apparatus, and also with reference to the manner in which the deceased came to his death. In this sunken or basement room, fifty feet long north and south by thirteen feet nine inches wide east and west, it appears that there are two conveyors consisting of receptacles called buckets mounted on a double sprocket chain, one running from north to south and from seven and one-half to fifteen inches west of the east wall, and one running in the opposite direction and about the same distance east of the west wall and three feet two inches apart. Each runs very slowly and at an elevation of about one foot from the floor of the room and horizontal to the floor until it passes round a sprocket wheel and changes its horizontal motion to a vertical motion in its journey to the elevated bins. In this sunken room there is a platform three and one-half feet above the floor in the south end of the room and eight by ten feet in surface area, but whether the east conveyor passed under any part or beam of this platform is very obscure, and we have no evidence concerning the number or location of the hoppers. There is evidence that this platform extends from the west wall to the west line of the east conveyor, and there is contradictory evidence with reference to whether the surface extension of ten feet is from east to west or from north to south. If the jury are to pronounce that this place is not as safe as the nature of the work would permit, they must be informed of its description with substantial accuracy by the plaintiff. The case is also very hazy on the question whether the death was caused by negligence of the employer or was the result of an unaccountable accident. With reference to the statutory rules of liability within which the facts must bring the case, the attention of counsel is invited to *Minneapolis, St. P. & S. S. M. R. Co. v. Industrial Comm.* 153 Wis. 552, 141 N. W. 1119, where the injury occurred June 24, 1912, and the in-

jured party was not a shop or office employee; also to the case
of *Salus v. G. N. R. Co.* 157 Wis. 546, 147 N. W. 1070,
where the injury occurred March 29, 1913; also to *Cox v.
C., M. & St. P. R. Co.* 159 Wis. 491, 149 N. W. 709, 151 N.
W. 267, where the injury occurred September 26, 1911. It
is hoped that if the case ever makes another appearance in
this court it will be more thoroughly presented on the facts
and the dark places in the law above suggested illuminated by
such learned briefs that *post argumentum* communications to
this court will be unnecessary.

*By the Court.*—Judgment reversed, and the cause re-
manded for a new trial.