RANDALL, Respondent, vs. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, Appellant.

*February 2—February 22, 1916.*

*Railroads: Regulation as to headlights: Constitutional law: Police power: Classification: Absolute liability for damages resulting from violation: Criminal conviction not a condition precedent: When person is a trespasser on track: Federal statute: Effect on prior judgment: Excessive damages.*

1. Sec. 1809*v*, Stats. 1913,—requiring that every railroad locomotive, except those used exclusively for switching and yard service, shall be equipped with a headlight that in clear weather will throw a light which will enable the operator to discern a man-

sized object "at a distance of not less than eight hundred feet," when operated at nighttime, and declaring that any corporation violating its provisions "shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine . . . , and in addition shall be liable for all damages resulting in whole or in part, directly or indirectly, from such violation,"—is not invalid as being unreasonable and indefinite, but is a proper exercise by the legislature of the police power for the safety of the public.

2. The exception in said statute of locomotives used exclusively for switching and yard service is a legitimate and reasonable classification in view of the purpose of the act and the special methods required for the conduct of switch and yard service.

3. The locomotive of a through train is not within the exception while hauling such train through the yard at a station.

4. Said statute imposes an absolute liability upon railroad companies for damages resulting from its violation; and a conviction for such violation is not a condition precedent to the recovery of damages.

5. An absolute liability being imposed by said statute, where plaintiff's injuries were caused in whole or in part by defendant's failure to have a proper headlight on its engine, the questions of negligence, proximate cause, and contributory negligence (not characterized by recklessness or wantonness) are not involved in the inquiry as to the right of recovery.

6. A game warden who arrived at a station after midnight intended to return by the same train, the cars of which were placed on a sidetrack to remain until the return trip at 4:35 a. m. After completing his work of inspection in the baggage car at about 1:50 a. m. he started to go across the tracks to the ticket office with the intention of buying his ticket and then returning to the cars on the sidetrack and remaining there until the train should depart. While crossing the main track he was struck by a train. *Held*, that it was not unlawful for him to attempt to buy his ticket more than two hours before his train left, and that he was not a trespasser.

7. A finding by the jury to the effect that the failure to have a proper headlight on the engine of the train which struck the plaintiff contributed to produce his injury, is *held* to be sustained by the evidence.

8. Plaintiff having in May, 1914, recovered a judgment for damages on account of such injury, the act of Congress of March 4, 1915, even if it abrogates the state regulation as to headlights, cannot affect his rights under such judgment.

9. The refusal of the trial court to set aside as excessive or to re-
duce an award of $2,500 for serious injuries to the left arm and
shoulder of a man about forty years of age, is *held* not so clearly
wrong as to justify this court in disturbing the award.

APPEAL from a judgment of the circuit court for Price
county: G. N. RISJORD, Circuit Judge. *Affirmed.*

This is an action to recover damages for an injury sus-
tained by the plaintiff as a result of a collision with one of de-
fendant's locomotives.

The defendant is a railroad corporation operating more
than fifty miles of track within the state and one of its sta-
tions is located at Spencer, Wisconsin. The defendant's
tracks run through Spencer in a northerly and southerly di-
rection. The main track is the first one east of the depot and
there is a platform about twelve feet wide extending from the
depot toward this track. The branch line track leading to
Ashland is the second track east of the depot and a coach
track is the third one east of the depot. There is a platform
about twelve feet in width between the main line track and
the Ashland branch track. The two platforms are connected
by crosswalks.

The plaintiff is a man about forty years of age and is deaf.
At the time of the accident he was a game warden. He
boarded the south-bound train at Phillips, a station on the
Ashland branch, for the purpose of detecting violations of the
game laws. This was on Sunday evening, November 17,
1912. He rode to Spencer in the baggage and express car,
which contained the shipped deer. The train reached Spen-
cer shortly after midnight, and the cars were put on the third
or coach track and were to remain there up to the time for
the return trip to Ashland. The plaintiff was busy with his
inspection, except for a short time while he went to a res-
taurant for lunch, until 1:50 a. m. Having completed this
work at this time he left the baggage and express coach to go
to the ticket office to purchase a ticket for his return trip to

Phillips. He attempted to cross the tracks on one of the crosswalks. The night was not clear, rather cloudy and dark. Plaintiff testified that, before crossing the main track, about ten feet from the rails he looked up and down the track, but saw nothing; that he then started to walk across the track when he sensed something to be wrong, so jumped to save himself. The locomotive struck the plaintiff and inflicted serious injury on his left arm and shoulder. Plaintiff further testified that when he looked in both directions before crossing he did not see any train approaching nor did he see any light or a headlight. One Genett testified that he saw the engine and that it had no headlight. The testimony of the plaintiff and Genett is flatly contradicted by seven of the railroad employees as regards the engine having a headlight. They all assert that the headlight was lighted and the two side lights also. It is admitted, however, that the headlight on the engine did not comply with the calls of the statute.

The court submitted a special verdict to the jury, who found (1) that the locomotive was not equipped with a regulation headlight; (2) that the failure to have such a headlight was a proximate cause of plaintiff's injury; (3) that defendant's servants were guilty of negligence in running the train the way they did at the time of the injury; (4) that such negligence was a proximate cause of the plaintiff's injury; (5) that plaintiff was not a trespasser at the time; (6) that the plaintiff was not guilty of any want of ordinary care that contributed proximately to produce his injury; and (7) assessed plaintiff's damages at $2,500.

The court granted plaintiff's motion for judgment on the verdict and entered judgment in plaintiff's favor in the sum of $2,500 damages, together with the cost and disbursements of the action. From such judgment this appeal is taken.

For the appellant there was a brief by *W. A. Hayes,* attorney, and *John L. Erdall,* of counsel, and oral argument by *Mr. Hayes.*

*W. K. Parkinson,* for the respondent.

SIEBECKER, J. It stands admitted that the engine with which the plaintiff collided was not equipped with a headlight as prescribed by the statute, sec. 1809v, Stats. 1915. This statute requires that every railroad locomotive, except those used exclusively for switching and yard service, shall be equipped with a headlight that in clear weather will throw a light which will enable the operator to discern a man-sized object "at a distance of not less than eight hundred feet," when operated at nighttime. Any violation of the provisions of this statute is declared to be "a misdemeanor" punishable by a fine, and the offender "in addition shall be liable for all damages resulting in whole or in part, directly or indirectly, from such violation." The provisions of this statute are assailed as invalid upon the grounds of being unreasonable and indefinite. Similar statutes have been adopted in many other states and have been upheld by courts as a proper exercise by the legislature of the police power for the safety of the public. *Atlantic C. L. R. Co. v. State,* 135 Ga. 545, 69 S. E. 725; *S. C.* 234 U. S. 280, 34 Sup. Ct. 829; *Vandalia R. Co. v. Railroad Comm.* 182 Ind. 382, 101 N. E. 85; *Chicago, R. I. & P. R. Co. v. Bryant* (Ark.) 162 S. W. 51. The federal supreme court, on appeal of the *Atlantic Coast Line Case,* declares:

"The use of locomotive headlights, however, is directly related to safety in operation. It cannot be denied that the protective power of government, subject to which the carrier conducts his business and manages its property, extends as well to the regulation of this part of the carrier's equipment as to apparatus for heating cars or to automatic couplers. The legislature may require an adequate headlight, and whether the carrier's practice is properly conducive to safety, or a new method affording greater protection should be substituted, is a matter for the legislative judgment."

The Georgia statute in its provisions is very like our statute, and the state and federal courts both declare that the action of the legislature is not an arbitrary or unreasonable regulation in this field, and that such statutes do not deprive

the carrier of liberty or property without due process of law. The provision excepting from the law locomotives used exclusively for switching and yard service is a legitimate and reasonable classification in view of the purpose of the act and the special methods required for the conduct of switch and yard service. These considerations bearing on the question of classification are also pertinent to the claim made that the engine in question at the time of the collision was employed in yard service and hence within the exception of the statute respecting switch- and yard-service locomotives. It is obvious that it cannot be so considered, for it is provided that only such locomotives are to be excepted from the regulation as "are used exclusively for switching service or in railroad yards." Manifestly all locomotives used in hauling trains are necessarily required to be used in passing through railroad yards with their headlights in use, and the regulation headlight is appropriate and practicable for that purpose. There is no basis for the claim that this locomotive at the time of collision was within the exception of the statute.

It is urged that no right of recovery under the statute exists until the party charged with its violation has been convicted thereof in a criminal prosecution. We discover no such legislative intent in the provisions of the act. Its language, purpose, and object indicate that the legislature conferred on persons who suffer damages resulting from its violation a right to recover them regardless of any conviction of the offender for the criminal act. After prescribing a criminal punishment for its violation it provides that the offender "in addition shall be liable for all damages resulting in whole or in part, directly or indirectly, from such violation." This language in its ordinary significance implies that a violation of the regulation imposes on the offender an absolute liability for the damages resulting from his conduct. The terms of this statute are the same in significance as those requiring railroads to fence their right of way and maintain cattle-

22]        JANUARY TERM, 1916.        513

Randall v. Minneapolis, St. P. & S. S. M. R. Co. 162 Wis. 507.

guards and making companies liable for damages to animals or persons thereon "occasioned in any manner, in whole or in part, by the want of such fences or cattle-guards." Sub. 2, sec. 1810, Stats. By the repeated decisions of this court it has been held that the fence statute imposed an absolute liability on railroad companies for damages resulting from a violation of this duty. The language in the two statutes is couched in equally positive terms as to imposing a liability resulting from their violation. In *Schwind v. C., M. & St. P. R. Co.* 140 Wis. 1, 121 N. W. 639, Mr. Justice Dodge, in speaking of the fence statute and distinguishing its terms from the terms of those statutes which impose similar duties, but where failure to perform the statutory duty is merely an act of negligence and therefore involves proximate causal relation to establish liability for resulting injuries, declares:

"All such cases are, however, beside the question presented by our present sec. 1810, Stats. (1898), for that, in addition to commanding the railroads to build a fence, expressly provides that in its absence 'such road shall be liable for all damages done to cattle, horses or other domestic animals, or persons thereon, occasioned in any manner, in whole or in part, by want of such fences or cattle-guards.' An injury may well be occasioned in whole or in part by the absence of a fence, although it may not be proximately caused thereby. It is enough if such omission gives occasion for entry on the place of injury. *Curry v. C. & N. W. R. Co.* 43 Wis. 665, 676." *Atkinson v. C. & N. W. R. Co.* 119 Wis. 176, 96 N. W. 529; *Hayes v. Mich. Cent. R. Co.* 111 U. S. 228, 4 Sup. Ct. 369; *Quackenbush v. Wis. & M. R. Co.* 62 Wis. 411, 22 N. W. 519.

And so here, since the statute imposes an absolute liability, the questions of negligence, proximate causal relation, and contributory negligence as understood in the law are not involved in the inquiry of plaintiff's right to a recovery and defendant's liability therefor. There is no doubt but that the plaintiff collided with the engine as alleged and that he suffered personal injuries. There is no evidence tending to

show that his action involved in the collision was character-ized by such recklessness or wantonness as to defeat his right of recovery.

It is also clear that the jury were justified in finding that plaintiff was not a trespasser in attempting to cross at the time he did for the purpose of buying a ticket at the depot ticket office for his return trip to Phillips. Under the cir-cumstances it was not unlawful for him to attempt to get his ticket two hours and more before his train left for Phillips. It appears that the cars of the train he expected to take were on the coach track and that he attempted to procure his ticket and return to these cars to remain until the train would depart. The attempt to purchase his ticket at this time and in the manner he undertook to do so furnishes no basis for holding that he was trespassing. He was rightly pursuing his pur-pose of returning to Phillips on defendant's train. The plaintiff testifies that he looked up and down the track before attempting to cross it on his way to the ticket office and did not see the approaching engine and train and that there was no light thrown on the track as he stepped on it. He is cor-roborated by another witness to the effect that the engine had no headlight. While this evidence is contradicted by a large number of witnesses, we cannot say that it is wholly incred-ible and that the trial court erred in submitting the issue to a jury. The court's attention was again directed to this ques-tion on defendant's motion after verdict which the court over-ruled. The trial court's conclusion on this question is of weight in support of the jury's finding that the defendant's failure to have a proper headlight on the engine contributed to produce the plaintiff's injuries. The record sustains the inference that the want of a headlight contributed to cause the collision and entitles plaintiff to recover under the stat-ute.

It is asserted that the field of legislation covered by this statute is included in the act of Congress of March 4, 1915,

which abrogates the state regulation. The judgment in this case was rendered in May, 1914. Under this state of the facts the act of Congress cannot affect plaintiff's right to recover on the judgment theretofore awarded to him.

The defendant asserts that the amount of damages found by the jury is excessive. The trial judge, speaking on the question in his opinion denying defendant's motion after verdict, states: "I do not think, under the evidence as to plaintiff's injuries in this case, it can be very seriously contended that the damages are excessive, at least so excessive as to warrant a new trial or alternative judgment under a reduced verdict for that reason." An examination of the record on this subject does not convince us that the trial court's conclusion is so clearly against the weight of the evidence on this question as to justify disturbing the award of damages. There is no reversible error shown in the record.

*By the Court.*—The judgment appealed from is affirmed.

WINSLOW, C. J., and BARNES, J., dissent.