Jacoby, Administratrix, Respondent, vs. Chicago, Milwaukee & St. Paul Railway Company, Appellant.

*February 15—June 12, 1917.*

*Railroads: Liability for death of employee: Federal statute: Interstate commerce: Fences: Statute construed: Where fence is required: Main tracks and switchtracks: Evidence: Appeal: Directing final judgment: Assumption of risk: Damages: Instructions to jury: Harmless error.*

1. In order that an action for the death of a railway employee shall come within the federal statute it must appear that at the time of the accident both the carrier and the employee were actually engaged in interstate commerce.
[2. Whether a car clerk in the receiving department of a railway company while employed in the yards in and around the car shops in checking over and keeping account of the cars loaded with company material, many of which cars were received from, and others consigned to, points outside the state, is engaged in interstate commerce, is not determined.]
3. Where such clerk, after having completed all his duties and having left the last place where any of his duties were to be performed, was struck and killed by an engine as he was leaving the railway premises without any immediate intention of returning, he was not, just at the time of the accident, engaged in interstate commerce.

4. Sec. 1810, Stats.,—which makes a railway company absolutely liable for all damages occasioned by its failure to fence its road as therein required,—is for the benefit of railway employees as well as for the general public, and is applicable in the case of an employee who was killed while leaving the railway premises.

5. Under said sec. 1810 the duty of a railway company to fence both sides of any portion of its road except depot grounds and places where, as provided in sub. 4, the proximity of ponds, lakes, watercourses, ditches, embankments, etc., renders a fence unnecessary, is absolute; and this court has not recognized the rule (adopted in certain jurisdictions) under which other exceptions may be read into the statute.

6. One of defendant's civil engineers having upon the trial identified as accurate and complete a blue-print map of the premises at and surrounding the place of the accident which disclosed no fence south of defendant's sidetracks, and neither such engineer nor any other witness having testified as to the existence of any fence opposite the place of the accident, it is *held* that there was no showing in the record of an attempted compliance by the defendant with sec. 1810.

7. Ten feet south of defendant's east-bound main track is a sidetrack about a mile and a half long, known as switchtrack No. 1, connecting at each end with said east-bound track. South of this track No. 1 and connected with it at the east end are nine or more parallel switchtracks of varying length, used largely in connection with defendant's car shops. Plaintiff's intestate was struck and killed by a switch engine on the east-bound main track, just after he had crossed switchtrack No. 1 by climbing over the bumpers between stock cars which were standing on that track. *Held*, that to sustain a judgment for plaintiff on the ground that defendant had failed to comply with sec. 1810, Stats., it must appear that the statute required a fence between the east-bound main track and switchtrack No. 1, since the absence of a fence anywhere else could not be said to have occasioned in whole or in part the death of the intestate.

8. It appearing, by the uncontradicted evidence, that said switchtrack No. 1 was used as a track on which cars, after being repaired in the shops, were placed in order that they might be taken off by a switch engine and put into the regular transportation business of the defendant, said track cannot be considered merely as a part of an industrial plant (the car-shop system) but must be held a part of defendant's "road," as that word is used in sec. 1810, Stats.; and hence no fence was required by law between said track No. 1 and the east-bound main track.

9. It being conceded by both parties that upon a second trial there

could be no change in the testimony as to the use of said track
No. 1, a final judgment dismissing the complaint is directed.

10. An employee of a railway company continuing in such employ-
ment with a knowledge of the fact that the road is unfenced
does not thereby assume the risk or waive his right, under sec.
1810, Stats., to recover for injuries occasioned by the want of
such fence.

11. In an action for the death of a railway employee it was error to
instruct the jury that the damages they might assess could not
exceed $10,000; but, the trial court having reduced their award
to $7,000, the error in the instruction would not of itself warrant
a reversal.

12. Although in such case the recovery is limited to the pecuniary
loss of the wife, evidence as to the number and ages of the chil-
dren of the deceased was properly admitted.

APPEAL from a judgment of the circuit court for Milwau-
kee county: OSCAR M. FRITZ, Circuit Judge. *Reversed.*

The appeal is from a judgment in favor of the plaintiff.

The action was brought to recover damages for the death of
plaintiff's husband, an employee of the defendant.

At the place of the accident, which is about three or four
hundred feet west of Merrill Park passenger depot in Mil-
waukee, are the two parallel main tracks of the defendant, the
one to the south being the east-bound.　At a distance of about
ten feet to the south of the east-bound track was a sidetrack
about a mile and a half long, connecting at the east and west
ends thereof with the main track by a switch and known as
Merrill Park track 1.　To the south of this sidetrack were
nine or more parallel switchtracks of varying length connected
at the east end with this track 1.　To the south and west of
the place in question are the roundhouses and car shops of the
defendant company, and to the south and east of Merrill Park
station are the foundry and machine shops of the Falk Com-
pany.　The car shops are quite extensive, covering a large
number of different shops and a large number of tracks sub-
stantially all connecting with the main tracks or the tracks
above specified.　About 700 feet west of the Merrill Park
station and therefore several hundred feet beyond the place

of the accident was a roadway through the car-shop yard and over the tracks in question, which roadway was maintained by the defendant and used to a large extent by employees in crossing these tracks. Flagmen were stationed there at certain hours of the forenoon and evening when there were a large number of employees so crossing, to give warning of trains to such employees. Numbers of employees also crossed these tracks at all points other than this roadway.

The deceased had worked for the defendant at the car shops for ten or twelve years as a clerk in the receiving department, but for the four or five months before he was killed he had been employed as car clerk in the same department. His duties as such required him to go to and from the storehouse, situated some distance to the south and west of the place of the accident, and to go through the yards and shops of the defendant in that neighborhood and ascertain the numbers of the cars and the material therein of cars coming and going from both within and without the state of Wisconsin, loaded with material that belonged to and was used by only the railroad company itself. He kept a record of the time when, and the numbers of the cars unloaded with such material and the total amount on tracks at the time. He would also seal cars loaded with such material to be shipped to points without the state of Wisconsin and place cards on the same showing the switchmen where such cars were to be switched and doing the same to the cars going to different shops in that yard. The cars with which he was concerned were loaded with materials such as lumber, steel, iron, etc., used for car and engine building and repairing, also general supplies for the railroad and machinery for the shops.

On August 5, 1912, the day preceding his death, the deceased had obtained a leave of absence for the 6th of August to attend to some private business at Port Washington, Wisconsin, with the understanding that he was to go to the yards early in the morning of the 6th and make up his report of the

cars standing on the tracks as required by his employment. It appears that on the morning of August 6th he did examine and make up a list of such cars and left the report of the same at the storehouse as customary. Upon completion of his duty in connection with such report he left the storehouse, went in a northeasterly direction east of the roadway above specified and across the sidetracks that have been described as lying south of the place of the accident.

On Merrill Park switchtrack No. 1 were a number of stock cars standing unattached to any locomotive. He was last seen before the accident in the act of climbing between two of these stock cars and jumping over the bumpers into the ten-foot space between this sidetrack and the east-bound main track. From there he went immediately to the north and upon the east-bound main track and was struck and instantly killed by a switch engine backing east on that main track at a speed of five to six miles an hour.

The complaint alleged violation by defendant of the provisions of sec. 1810, Stats., in that the defendant failed to inclose its right of way and had carelessly omitted the construction of fences and guards required by the provisions of said section. It also alleged that the deceased was at the time of the accident lawfully leaving the defendant's premises where he was employed in interstate commerce, and demanded judgment for $25,000.

The answer, among other things, denied that the deceased was on the day in question in the employ of or rendering services to the defendant, or any carelessness on its part causing his death, and alleged that the death was caused by the carelessness and negligence of deceased himself, and further denied that at the time he was killed he was engaged in interstate commerce, but during the trial the defendant was allowed to amend by alleging that deceased was at the time of the injury so engaged.

At the commencement of the trial the plaintiff moved to

amend the complaint by alleging that the deceased was in in-
trastate and not in interstate commerce.    It does not appear
that any ruling was had upon this motion, but during the
trial the plaintiff offered in evidence the paragraph of the an-
swer quoted above denying that at the time of the accident the
deceased was engaged in interstate commerce, and thereupon.
defendant moved to amend the answer by withdrawing that
allegation, which amendment was allowed by the court, but
the statement in the answer was received in evidence.    The
court permitted the plaintiff, over objection by defendant, to
prove the number and ages of the children of deceased sur-
viving him.

A special verdict was submitted to the jury in three ques-
tions, by the first of which the jury found that the premises
where deceased was killed were not a part of defendant's de-
pot grounds; and by the second that the death was occasioned
in whole or in part by the want of a fence between the track
on which he was killed and the first track south thereof; and
by the third question that the financial loss sustained by
plaintiff as the result of her husband's death was $10,000.

In the charge to the jury on the third question the court
said: "The damages in a case of this kind are restricted to the
pecuniary loss sustained by the widow, and under the stat-
utes the damages which you assess cannot exceed the sum of
$10,000."

Upon motions duly made after verdict the court made a
written decision wherein, among other things, he stated that
the series of ten tracks, including Merrill Park No. 1, which
have been described above, "were used solely in connection
with the defendant's plant for temporarily storing cars be-
fore and after repairing them in the shops;" that at the place
of the accident there is no siding or switchtrack actually used
in connection with the movement of freight or passenger
trains along those two tracks; that the deceased was charge-
able with contributory negligence so that recovery could only

be had upon the theory that sec. 1810 required the defendant to maintain a fence to the south of the track in question. He reached the conclusion that the statute required the defendant to maintain a fence between the track on which Jacoby was killed and the first track south thereof; that the damages were excessive and should be reduced to $7,000; and upon plaintiff's election to so remit judgment was directed in favor of the plaintiff, from which judgment the defendant appeals.

For the appellant there was a brief by *C. H. Van Alstine* and *H. J. Killilea,* both of Milwaukee, and oral argument by *Mr. Killilea.*

For the respondent there was a brief by *William F. Schanen* of Port Washington, attorney, and *James D. Shaw* of Milwaukee, of counsel, and oral argument by *Mr. Shaw.*

The following opinion was filed March 13, 1917:

Eschweiler, J.    The questions presented on this appeal are four: (1) Was the deceased at the time of the accident engaged in interstate commerce? or, (2) If not a case subject to the federal law, did the provisions of sec. 1810, Stats., the so-called fencing statute, apply, and was it rightly applied under the facts in this case by the trial court? (3) Was there reversible error in the charge of the court or (4) in the admission of evidence as to the children of the deceased?

No issue is raised by plaintiff on the point that if the deceased was at the time of the accident engaged in interstate commerce the federal law would apply and there would be no liability, and citation of cases therefore is unnecessary.

In a case of this kind, in order that it shall come within the purview of the federal statutes, it must appear that at the time of the accident both the carrier and the employee were actually engaged in interstate commerce. *Shanks v. D., L. & W. R. Co.* 239 U. S. 556, 560, 36 Sup. Ct. 188; *Zavitovsky v. C., M. & St. P. R. Co.* 161 Wis. 461, 154 N. W. 974.

Whether the general employment of the deceased in the

yards of the defendant in and around its car shops in checking over and keeping account of the cars loaded with material belonging to defendant itself, many of which cars were received from and others consigned to points outside of the state of Wisconsin, brought him within the rule of such cases as *St. Louis, S. F. & T. R. Co. v. Seale*, 229 U. S. 156, 159, 33 Sup. Ct. 651, is not necessary to be and is not determined in this case.

It appears from the uncontradicted testimony that the deceased had completed all of the operations required of him in the discharge of his duty to the defendant. He had turned in his report to the office and had left the last place at which any of his duties were to be performed and was free to go from that point in whatever direction he should choose without being under any further obligation to the defendant so far as his employment was concerned. We hold, therefore, that as this accident happened while he was so leaving the premises of the defendant without any immediate intention of returning to complete any of his duties, he was not, just at the time he met his death, engaged in interstate commerce. This case, therefore, is easily distinguished from *North Carolina R. Co. v. Zachary*, 232 U. S. 248, 260, 34 Sup. Ct. 305, where a fireman, after attending to his engine, was killed on crossing the track on his way to his boarding house, preparatory to returning to his engine for an interstate trip.

On the second proposition, relating to the application of sec. 1810, Stats., it is urged that, the deceased being an employee of defendant and in the act of leaving instead of going upon its premises, his case does not present one within the scope or purpose of the statute. This court, however, has directly held in the two cases of *Quackenbush v. Wis. & M. R. Co.* 62 Wis. 411, 22 N. W. 519, and 71 Wis. 472, 37 N. W. 834, that the statute is for the benefit of the employee of a railroad while thereon as well as for the general public, and we see no reason for altering that view of the statute. The

same principle has been adopted in other jurisdictions, as seen in the cases of *Dickson v. O. & St. L. R. Co.* 124 Mo. 140, 27 S. W. 476, 25 L. R. A. 320; *Donnegan v. Erhardt,* 119 N. Y. 468, 23 N. E. 1051, 7 L. R. A. 527; *Atchison, T. & S. F. R. Co. v. Reesman,* 60 Fed. 370, 23 L. R. A. 768.

The wording of sec. 1810, Stats., indicates that the duty is absolute of fencing both sides of any portion of its road except depot grounds and where the proximity of ponds, lakes, watercourses, ditches, etc., renders a fence unnecessary. *Schwind v. C., M. & St. P. R. Co.* 140 Wis. 1, 121 N. W. 639; *Ulicke v. C. & N. W. R. Co.* 152 Wis. 236, 139 N. W. 189; *Bejma v. Chicago & M. E. R. Co.* 160 Wis. 527, 149 N. W. 588, 152 N. W. 180; *Trojanowski v. C. & N. W. R. Co.* 163 Wis. 76, 157 N. W. 536.

This court has not recognized the rule adopted in certain jurisdictions of reading into the statutes exceptions other than those specified in the statute itself, as for instance where a construction of a fence and cattle-guard would seem to be an increased danger to human life, as in *Burnham v. C., B. & Q. R. Co.* 83 Neb. 183, 119 N. W. 235; *Mattes v. G. N. R. Co.* 95 Minn. 386, 104 N. W. 234, 235.

That a railroad company is so situated that its tracks are in close proximity to the tracks of other railroad companies, making it inconvenient or dangerous to fence the same, cannot exclude liability under a similar statute. *Kelver v. N. Y. & St. L. R. Co.* 126 N. Y. 365, 27 N. E. 553.

It is urged on argument that a fence had been erected in compliance with the statute to the south of all of these ten or twelve sidetracks opposite the place of accident. One of defendant's civil engineers was called and identified as accurate and complete a blue-print map of the premises at and surrounding the place of the accident, but no fence is disclosed on such map nor did such engineer testify as to the existence of any. The only evidence on this point was that of one Chorinski, a section foreman, but an examination of

his testimony discloses that the fence which he says at one place in his testimony was south of the tracks was a fence that had been erected by the Falk Company surrounding their plant to the south and east of the place of the accident. There is therefore no showing in the record of an attempted compliance by the defendant with sec. 1810.

To sustain a judgment for plaintiff in this case it must appear that defendant, under sec. 1810, was required to place a fence between the east-bound main track and switchtrack No. 1 just south of it. For, under the facts here presented, it is not contended by plaintiff that the absence of a fence anywhere else could be said to have occasioned in whole or in part the death of Jacoby.

Appellant contends that this track No. 1 is a part of its main railroad system and that it is used as a sidetrack for storing completed or repaired cars or engines preparatory to their being switched directly from there onto the main track to become a part of the general traffic; that such cars and engines are in effect put into transportation while there awaiting such use; that an engine comes daily and switches them from that track onto the main line.

The respondent contends that this sidetrack No. 1 as well as the ten or twelve tracks to the south of it are all parts of the car-shop system of defendant and as such to be treated as an industrial plant, separate and distinct from its transportation system, as much so as though the car shops were owned or operated by an independent company.

An examination of the testimony in the record on this controlling feature of the case satisfies us that it is not sufficient as it now stands to support the conclusion arrived at by the learned trial court in holding that a fence should have been erected between the main track and switchtrack No. 1. The testimony is indefinite and uncertain as to whether or not the use made of track No. 1 for storing cars and engines after they had left the shops was peculiar to that track or whether

the same use was not made of the tracks to the south of No. 1.
If these ten or twelve tracks are all used alike and as a unit
for transportation purposes, then the fence could not have
been required between track No. 1 and the main track, or, if
track No. 1 alone was a part of the transportation system,
then still the fence could not have been required north of
track No. 1; while if track No. 1 is properly to be considered
as a part of the defendant's industrial plant, then under the
facts as here presented it may be held that compliance with
the absolute terms of sec. 1810 requires such fencing at the
point indicated by the trial court.

The trouble, however, with the present judgment is that
the evidence is not sufficient to support the finding of the trial
court in that regard.

From the testimony of Mr. Gregg, chief dispatcher of the
Milwaukee shops, on his direct examination the following
questions and answers were had:

"*Q.* Now what are the *tracks* immediately south of the
east-bound track used for? *A.* For company material and
repair cars and cars that have been repaired and cars ready
to be shipped out to different points on the road. *Q.* Are
cars moved on that *track? A.* They are."

He also testified that the tracks parallel with and south of
this No. 1 were numbered consecutively and that there was
a lead or switch off of No. 1 track that connects all the others
to the south. Again:

"*Q.* And the *track* No. 1 south of the main track was used
for what? *A.* For cars that was ready for shipment, that
was repaired and ready to go out on the road. *Q.* Sort of
storage cars? *A.* For the time being." There was a switch
engine came daily and switched the cars to different yards
for different destinations. "*Q.* That is, that was the place
where you put the repaired product from your factory, from
your shops? *A.* Yes, sir. *Q.* Cars came there? *A.* Ready
for shipment. *Q.* And when they are fixed up you put them
out on track No. 1? *A.* Yes. *Q.* It is not used as a passing

track for freight? *A.* No, sir. *Q.* Not used for traffic? *A.* No, sir. *Q.* But merely as a place—shelf—where you put the cars after you fix them up? *A.* Yes, sir."

So it will be noted that in one place he gives the general use of these *tracks* and then again he speaks only of *track* No. 1, so that it cannot be fairly said one way or the other as to whether there is in fact any difference in the use of these several tracks, which is a vital question in the case.

After the close of the testimony plaintiff asked leave to re-open the case for the purpose of showing that there had been owned and operated by the defendant a line or road along what are designated the main tracks before the existence of the shops, and that the combination of tracks and structures south of the main tracks was subsequently located and constructed by the defendant, and also offered to show the width of the original line or road. This offer of testimony was rejected by the court. This testimony may become material in determining the important question as to the real status of track No. 1.

It is essential, therefore, before it can be held that the absence of a fence was responsible for the death of Jacoby, that it shall be determined by the jury or court whether the contention of plaintiff as to the location of the fence is supported by the actual facts, and the case must be sent back for a new trial for that purpose. *Zavitovsky v. C., M. & St. P. R. Co.* 161 Wis. 461, 154 N. W. 974. If that be found, then the jury may properly be required to consider the second question of the special verdict, as to whether or not the absence of the fence occasioned in whole or in part the death of Jacoby under the rule laid down by this court in the case of *Trojanowski v. C. & N. W. R. Co.* 163 Wis. 76, 157 N. W. 536. The facts in this case do not bring it within the rule of *Vaillant v. C. & N. W. R. Co.* 163 Wis. 548, 158 N. W. 311, relied upon by appellant.

It is urged by appellant that, even if it be found that

Jacoby's death was due to the want of a fence under sec. 1810, nevertheless he, being an employee of defendant at the time of the accident and, as it must be presumed from the evidence, familiar with the situation, is chargeable with the assumption of such risk growing out of his employment, and that thereby his right to recover would be defeated. This question of assumption of risk under sec. 1810 was squarely before the court in the case of *Quackenbush v. Wis. & M. R. Co.* 62 Wis. 411, 22 N. W. 519; *S. C.* 71 Wis. 472, 37 N. W. 834, and it was there held that an employee of a railroad company continuing in such employment with knowledge of the fact that the road is unfenced does not thereby waive his right to recover for injuries occasioned by the want of such fence. The absolute nature of such statutes has been repeatedly passed upon by this court. *Randall v. M., St. P. & S. S. M. R. Co.* 162 Wis. 507, 513, 156 N. W. 629; *Alexander v. M., St. P. & S. S. M. R. Co.* 156 Wis. 477, 146 N. W. 510; *Ulicke v. C. & N. W. R. Co.* 152 Wis. 236, 139 N. W. 189; *Schwind v. C., M. & St. P. R. Co.* 140 Wis. 1, 121 N. W. 639.

And this question of any assumption of risk by the deceased may also be disposed of in the negative on the theory that this statute, being held as it is for the general protection of human life, gives an employee who is a member of the general class sought to be protected the same benefit as one outside of such employment; and as to such outsider there is no doctrine of assumption of risk. *Knauer v. Joseph Schlitz B. Co.* 159 Wis. 7, 12, 149 N. W. 494; *Conrad v. Springfield R. Co.* 240 Ill. 12, 17, 88 N. E. 180, 182, 130 Am. St. Rep. 251; *Chicago & E. I. R. Co. v. Randolph,* 199 Ill. 126, 65 N. E. 142.

The statement by the court in its charge to the jury that the damages they might assess could not exceed $10,000 was error under the rule in *Otto v. M. N. R. Co.* 148 Wis. 54, 60, 134 N. W. 157. In view of the fact, however, that the dam-

ages were reduced by the court from $10,000 to $7,000, this would not warrant us in reversing the case on the point of this instruction alone.

The objections to the testimony of plaintiff as to the number and ages of the children of deceased were properly overruled. *Hamann v. Milwaukee B. Co.* 136 Wis. 39, 46, 116 N. W. 854.

*By the Court.*—It is ordered that the judgment of the circuit court be reversed and a new trial granted.

The following opinion was filed June 12, 1917:

WINSLOW, C. J.  Respondent moves for a rehearing and urges that if, under the testimony in the record, the court is convinced that track No. 1 was used for railway rather than for industrial purposes, the court determine that fact now and not send the case back for another trial.  In support of this position respondent says that the proof concerning the use of this track is clear and conclusive, that no more complete evidence could be produced upon another trial, hence that another trial would be a useless expenditure of time and money.

This contention is evidently advisedly made by counsel who are fully cognizant of its importance and of its effects, and we have concluded to act upon it.  Certainly it is no kindness to either party to order a new trial when all the facts are already before the court as fully as they could be brought out on another trial.

It was said in the former opinion that "To sustain a judgment for plaintiff in this case it must appear that defendant, under sec. 1810, was required to place a fence between the east-bound main track and switchtrack No. 1 just south of it."  This was based upon our conclusion that there was no evidence on which it could be found that Jacoby entered on the danger zone at any particular place except the point

where he climbed over the bumpers and between the stock cars standing on track No. 1.

It was stated in this connection that respondent did not contend that the absence of a fence anywhere else could be said to have caused Jacoby's death, and this latter statement is challenged by respondent's counsel on this motion.

We do not, however, have occasion to consider this challenge now, as we are still convinced that in order to sustain plaintiff's claim it must appear that a fence was required by sec. 1810 between the east-bound main track and track No. 1.

The uncontradicted evidence shows that track No. 1 was parallel with and next to the main track and was used as a track on which cars, after being repaired, were placed in order that they might be taken off by a switch engine and put into the regular transportation business of the company. The court is still of the opinion that under these facts track No. 1 cannot be considered merely as a part of the industrial plant, but must be held a part of defendant's "road" as the word is used in sec. 1810 of the Statutes.

This conclusion makes it certain that no fence was required by law between track No. 1 and the main track, and hence that there was no ground for a recovery. As it is conceded all around that there could be no change in the testimony as to the use of track No. 1 on a second trial, final judgment should now be ordered.

The mandate will therefore be amended so as to read: "Judgment reversed, and action remanded with directions to dismiss the complaint on the merits."

*By the Court.*—The mandate is amended as indicated in this opinion, and motion for rehearing denied in all other respects.

SIEBECKER, KERWIN, and ESCHWEILER, JJ., dissent.